GROSS, J.
Under the facts of this unfortunate case, we hold that an employer does not have a duty to warn one employee about -a second employee’s criminal background, where the warning pertains to the employees’ personal relationship outside of work.
K.M., a minor, and her father timely appeal an order granting a motion to dismiss for failure to state a cause of action. See Fla. R. Civ. P. 1.140(b)(6). We therefore view the facts in the amended complaint in the light most favorable to K.M. and her father. See, e.g., Bell v. Indian River Mem’l Hosp., 778 So.2d 1030, 1032 (Fla. 4th DCA 2001).
When K.M. was seven years old, .her mother was employed at a Publix supermarket in Broward County. She worked in the business office with store manager David Moses. Moses scheduled the mother to work in the early mornings and late afternoons. This schedule required the mother to make child care arrangements for K.M.
The mother arranged for another Publix employee, Robert Woodlard, to babysit. Woodlard and the mother had become Mends through their Publix jobs .and Woodlard agreed to care for K.M. at his home. This arrangement enabled the mother to work the required hours.
Moses was aware that Woodlard was taking care of K.M. Because he had been contacted by the Department of Corrections, Moses also knew that Woodlard was on parole from a previous conviction for attempted sexual battery on a minor under 12. According to the amended complaint, based on that information, Moses knew or should have known that Woodlard was unfit to provide child care, but failed to warn the mother of that danger.
Unaware of Woodlard’s criminal background, the mother entrusted K.M. to him over a three-month period. During that time, Woodlard sexually abused KM. on at least two occasions.
The trial court granted Publix’s motion to dismiss with prejudice, holding that (1) Publix owed KM. no duty, common law or otherwise, and (2) “[t]he employees involved in this case ... have rights to engage in relationships and to be left alone that are guaranteed by the Florida Constitution and the United States Constitution.”
Whether the allegations of a complaint are sufficient to state a cause of action is a question of law. See Siegle v. Progressive Consumers Ins. Co., 819 So.2d 732, 734 (Fla.2002). It follows that this court applies a de novo standard of review to an order dismissing a complaint for failure to state a cause of action; we must accept the allegations of the complaint as true, but do not defer to the trial court’s conclusions regarding the legal sufficiency of the allegations. Id. at 734-35.
KM. contends that this case falls under section 302B of the Restatement (Second) of Torts (1964), which provides, in pertinent part, that an “omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of ... a third person which is intended to cause harm, even though such conduct is criminal.”
However, the section 302B negligence standard applies only if the actor is under a duty to avoid the unreasonable risk. “The duties of one who omits to act are ... in general confined to situations where there is a special relation between the actor and the other which gives rise to *1117 the duty.” Restatement (Seoond) of Toets §§ 302 cmt. a, 302B cmt. a.
The general rule is that a party has no legal duty to “prevent the misconduct of third persons.” Michael & Philip, Inc. v. Sierra, 776 So.2d 294, 297 (Fla. 4th DCA 2000). As the court noted in Boynton v. Burglass, 590 So.2d 446, 448 (Fla. 3d DCA 1991), “Florida courts have long been loathe to impose liability based on a defendant’s failure to control the conduct of a third party.” See E.L. Kellett, Private Person’s Duty and Liability for Failure to Protect Another Against Criminal Attack by Third Person, 10 A.L.R.3d 619, §§ 2-3.
Florida recognizes the special relationship exception to the general rule of non-liability for third-party misconduct. The existence of a special relationship gives rise to a duty to control the conduct of third persons so as to prevent them from harming others.[1] Florida has adopted the “special relationship” test set forth in the Restatement (Second) of Torts, Section 315, which states:
§ 315 General Principle
There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless
(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person’s conduct, or
(b) a special relation exists between the actor and the other which gives to the other a right to protection.
See Sierra, 776 So.2d at 298; Aguila v. Hilton, Inc., 878 So.2d 392, 398-99 (Fla. 1st DCA 2004). Comment c to section 315 provides:
The relations between the actor and a third person which require the actor to control the third person’s conduct are stated in §§ 316-319. The relations between the actor and the other which require the actor to control the conduct of third persons for the protection of the other are stated in §§ 314A and 320.
Sections 316 and 318 of the Restatement relate to the duty of a parent to control the conduct of a child and the duty of a possessor of land or chattels to control the conduct of a licensee, respectively, and neither are applicable here. Nor does K.M. fall under sections 314A or 320, since she was not in the custody of Publix at any time and they did not have a common carrier-passenger, innkeeper-guest, or possessor of land-invitee relationship.
Section 317[2] involves the duty of a master to control the conduct of a servant. As formulated by the Restatement, that duty is limited to acts committed by employees (1) with the employer’s chattels or (2) upon the premises of the employer or premises “upon which the servant is privileged to enter only as” the employer’s servant. This section does not affect K.M.’s case because the criminal attacks occurred off *1118 Publix’s premises and did not involve its property. Although there was an employment relationship between Publix and the mother, that relationship did not place a duty upon Publix with regard to its employees’ extracurricular relationship. The mother’s personal situation — that she needed child care in order to work — did not create a-duty where one would not otherwise exist. To address one of KM.’s arguments, the occurrence of the assault off-premises takes this case out of section 317, and precludes an action against Publix for negligent retention. See Bennett v. Godfather’s Pizza, Inc., 570 So.2d 1351 (Fla. 3d DCA 1990) (holding that restaurant who furnished employee leaving work with beer owed no duty to passenger in employee’s car who was injured later that evening in a collision)..
Finally, section 319 of the Restatement imposes a duty of care upon one “who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled.” Here, Publix did not “take charge” of Woodlard to the extent necessary to fall within this section. In Schmidt v. HTG, Inc., 265 Kan. 372, 961 P.2d 677, 688 (1998), the Kansas Supreme Court reviewed the law on section 319 and concluded that a state parole officer did not take charge or exercise control over a parolee within the meaning of section 319 so as to gives rise to a duty to control the conduct of a third party to prevent harm to others. As a civilian employer, Publix exerted far less control over Woodlard than a parole officer, so section 319 is inapplicable here.
When this court has recognized a duty to take precautions against the criminal acts of third parties, it has required the existence' of a “special relationship.”[3] Gross v. Family Servs. Agency, Inc., 716 So.2d 337, 339 (Fla. 4th DCA 1998), affirmed sub nom. Nova Southeastern Univ., Inc. v. Gross, 758 So.2d 86 (Fla.2000). In Nova Southeastern, a university assigned an adult student to an off-campus internship site that the university knew was located in a high crime area. The adult student filed suit after she was criminally assaulted in the parking lot of that site. Both this court and the supreme court found that the adult student-university relationship was a special relationship that imposed a duty on the school to act reasonably in providing educational services and programs.[4] See Nova Southeastern, 758 So.2d at 89-90.
K.M. relies upon Shurben v. Dollar Rent-A-Car, 676 So.2d 467 (Fla. 3d DCA 1996); however, that case demonstrated a special relationship between the plaintiff and the defendant that does not exist in this case. The Shurben plaintiff was an out-of-town tourist. The complaint alleged that “1) at the time of [plaintiffs] trip in early 1992 rental cars bore a license plate designation which knowledgeable criminals knew identified the car as a rental; 2) at that time there had been repeated instances of criminal activity directed at tourists in rental cars in certain areas of Miami *1119 and that Dollar was aware of those instances; and 8) Dollar knew that [the plaintiff] was an arriving British tourist without specific information as to the existence of the special license plate designation or the crimes directed at tourists.” Id. at 468.
The trial court entered dismissal after finding that those allegations did not give rise to a legal duty. The third district reversed, holding that a legal duty did exist under section 802B, particularly in light of defendant’s “superior knowledge.” Id.
Shurben did not specifically mention the special relationship doctrine. However, we explained in Family Services that Shurben “demonstrated that Florida courts have been especially sensitive in finding the requisite special relationship to exist.” Family Services, 716 So.2d at 339. The special relationship in Shurben was the customer-rental agency relationship.
The special relationship test is a limitation on the scope of one’s liability for the intentional acts of third parties. The Restatement and Florida law set parameters on employers’ liability for the acts of their employees. As the second district has explained,
once liability began to be imposed on employers for acts of their employees outside the scope of employment, the courts were faced with the necessity of finding some rational basis for limiting the boundaries of that liability; otherwise, an employer would be an absolute guarantor and strictly liable for any acts committed by his employee against any person under any circumstances. Such unrestricted liability would be an intolerable and unfair burden on employers.
Garcia v. Duffy, 492 So.2d 435, 439 (Fla. 2d DCA 1986). To expand employers’ liability in this area would have “broad ramifications,” requiring employers to monitor their employee relationships apart from work, in areas such as commuting and socializing. See D’Amico v. Christie, 71 N.Y.2d 76, 524 N.Y.S.2d 1, 518 N.E.2d 896, 901-02 (N.Y.1987) (holding that employer who fired inebriated employee and ordered him off the work site did not owe a duty to users of public highways who might later be injured by the employee).
Without any special relationship, this case falls under the general rule of “section 314 of the Restatement (Second) of Torts (1964), which provides that the fact that a person realizes or should realize that action on his part is necessary for another’s aid or protection does not of itself impose a duty to take such action.” Garrison Retirement Home Corp. v. Hancock, 484 So.2d 1257, 1261 (Fla. 4th DCA 1985). In the absence of specific threats, courts in other states have not imposed a duty to warn third parties of the criminal backgrounds of persons released from custody. See Eric J. v. Betty M., 76 Cal.App.4th 715, 90 Cal.Rptr.2d 549 (1999) (providing that family members of paroled sex offender had no duty to warn girlfriend of their family member’s prior criminal history, such that girlfriend could not bring suit for boyfriend’s sexual assault of her minor child); Thompson v. County of Alameda, 27 Cal.3d 741, 167 Cal.Rptr. 70, 614 P.2d 728, 734 (1980) (court held that no duty placed on a county for failing to warn parents of neighborhood children of juvenile offender released on temporary leave to his mother’s custody, even where county knew of offender’s “dangerous and violent propensities regarding young children”); Apple v. Tracy, 34 Mass.App.Ct. 560, 613 N.E.2d 928 (1993) (holding that private citizen who had child sex offender as a guest in his home after the offender’s release from prison did not have a duty to warn neighborhood parents and the local police about the offender’s presence).
*1120 The facts of this case did not impose a duty on Publix with respect to its employee’s away-from-work childcare decisions. An employer does not owe a duty to persons who are injured by its employees while the employees are off duty, not then acting for the employer’s benefit,[5] not on the employer’s premises, and not using the employer’s equipment.
AFFIRMED.
POLEN and STEVENSON, JJ., concur.

.Courts have carved out other exceptions to the general rule, but they do not apply in this case. In Daly v. Denny’s Inc., 694 So.2d 775, 777 (Fla. 4th DCA 1997), we wrote that
the duty to protect strangers against the tortious conduct of another can arise if, at the time of the injury, the defendant is in actual or constructive control of:
1. the instrumentality;
2. the premises on which the tort was committed; or
3. the tort-feasor.
Here, the injury did not occur on Publix’s premises, did not involve an instrumentality such as a car, and Publix did not have the right to control Woodlard when he was away from work on his own time.

. The Florida Supreme Court adopted section 317 of the Restatement (Second) of Torts in Mallory v. O’Neil, 69 So.2d 313 (Fla.1954). See Malicki v. Doe, 814 So.2d 347, 362 n. 14 (Fla.2002).

. In Family Services, we identified those special relationships as including (1) employer-employee; (2) landlord-tenant; (3) landowner-invitee; and (4) school-minor student. 716 So.2d at 338-39 (footnotes omitted).

. In Family Services, we recognized that the relationship between a school and a minor student qualifies as a special relationship imposing a duty of care upon the school. 716 So.2d at 339 n. 4. K.M. relies upon Marquay v. Eno, 139 N.H. 708, 662 A.2d 272, 279 (1995), where the New Hampshire Supreme Court held that "schools share a special relationship with students entrusted to their care, which imposes upon them certain duties of reasonable supervision.” Here, there is no claim that the child was entrusted to Publix or that Publix provided on-site child care in the store.

. We reject the argument that Woodlard was acting for Publix’s benefit while, babysitting: The benefit to Publix was too indirect. Under this argument, someone who helps an employee get to work, such as a carpool driver, would be acting for the benefit of the employer.