[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 7, 2007
THOMAS K. KAHN
CLERK

_____

No. 05-15088

_____

D. C. Docket No. 03-81110-CV-DTKH

9:04cv80253

MAUREEN STEVENS, as personal
representative of the Estate
of Robert Stevens, deceased,

Plaintiff-Appellee,

versus

BATTELLE MEMORIAL INSTITUTE,
a foreign corporation,

Defendant-Appellant,

BIOPORT CORP., a foreign
corporation, et al.,

Defendants.

--------------------------------------------------------------------------------

9:03cv81110

MAUREEN STEVENS, as Personal
Representative of the Estate of
Robert Stevens deceased, and on
behalf of Maureen
Stevens, individually, Nicholas
Stevens, Heidi Hogan, and Casey
Stevens, survivors,

                                        Plaintiff-Appellee,

                    versus

UNITED STATES OF AMERICA,

                                        Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

**(June 7, 2007)**

Before BARKETT and KRAVITCH, Circuit Judges, and TRAGER,[*] District
Judge.

KRAVITCH, Circuit Judge:

---

[*] Honorable David G. Trager, United States District Judge for the Eastern District of New
York, sitting by designation.

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF FLORIDA, PURSUANT TO FLA. R. APP. P. 9.150(a).  TO THE SUPREME COURT OF FLORIDA AND ITS HONORABLE JUSTICES:

This case involves the question of what duties exist under Florida law to protect members of the public where an organization creates a significant risk by using anthrax or other ultra-hazardous materials.

## I. Background

In the fall of 2001, an unknown group or individual mailed letters containing *Bacillus Anthracis* ("anthrax") to recipients in Florida, New York, and Washington, D.C.  One such letter was mailed to American Media, Inc. ("American Media") in Boca Raton, Florida where Robert Stevens ("Mr. Stevens") worked.  Mr. Stevens became ill and died after inhaling the anthrax.  As a result, two wrongful death suits were brought by Maureen Stevens, his wife, individually, as a personal representative of the estate of Mr. Stevens, and on behalf of their three children (collectively "Stevens").  Stevens sued the United States in federal court and Battelle Memorial Institute ("Battelle"), a private research facility, in state court, alleging that they were the source of the anthrax that killed Mr. Stevens.  Battelle removed the state case to federal court and the two suits were consolidated for discovery purposes.

The complaint against the United States, brought pursuant to the Federal

Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 et seq. , alleged that the origin of the strain of anthrax that killed Mr. Stevens could be traced to the United States Army Medical Research Institute for Infectious Diseases ("USAMRIID") at Fort Detrick, Maryland.  The suit alleged further that the government knew it was utilizing an "ultra-hazardous" material requiring the highest degree of care in its handling, storage, use, and possession, and that, as early as 1992, samples of anthrax were missing from USAMRIID.[1]  The complaint stated that despite this knowledge, the government failed to provide adequate security for the handling or shipping of the materials, and, as a result, sometime before October 2001 anthrax was improperly intercepted either from USAMRIID or from another research facility to which the materials had been sent.  The complaint does not describe the relationship between the government and the person who initially intercepted the anthrax or between the government and the person who eventually mailed the anthrax to American Media.

The complaint against Battelle alleged that Battelle breached its duty of care to Mr. Stevens by failing to implement adequate security procedures at its facility. The suit alleged, inter alia, that Battelle failed to properly maintain the anthrax it

---

[1] The complaint against the government originally included a claim for strict liability, but the government argued that the FTCA did not waive sovereign immunity for strict liability claims, and after Stevens conceded the issue, this claim was dismissed by the district court.

4

was using for research, monitor employees who had access to the anthrax, or secure the facility from unauthorized access. The complaint also alleged that Battelle was negligent in its hiring practices because it failed to conduct background investigations prior to hiring individuals who would have access to anthrax. Finally, the complaint alleged negligent supervision of employees working with anthrax. As a result of these failings, the complaint alleged that anthrax was obtained and sent to American Media.

The government moved to dismiss the complaint against it under Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim upon which relief may be granted. The government noted that § 315 of the Restatement (Second) of Torts (1965), which has been adopted in Florida,[2] provides:

> There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation exists between the actor and the other which gives to the other a right to protection.

As such, the government argued that it could not be liable for any third party criminal activity allegedly occasioned by negligent security practices because it owed no duty of protection to Mr. Stevens, a stranger, and did not have a duty or ability to control the unidentified third party tortfeasor or tortfeasors responsible

---

[2] See Michael & Philip, Inc. v Sierra, 776 So. 2d 294, 298 (Fla. Dist. Ct. App. 2000).

for intercepting and mailing the anthrax. Reiterating this argument, Battelle moved for judgment on the pleadings pursuant to Rule 12(c). Battelle also argued that Stevens could not satisfy the element of proximate cause. Stevens responded to these motions by arguing that the complaint did not allege a claim of failure to control or prevent the mailing of the anthrax by a third party criminal, but, rather, a claim of duty of care "whenever a human endeavor creates a generalized and foreseeable risk of harming others."

The district court denied the government's and Battelle's motions. Agreeing that Florida law should be applied,[3] the district court described Stevens's claim as falling under the "foreseeable zone of risk" theory. See McCain v. Florida Power Corp., 593 So. 2d 500, 502 (Fla. 1992) ("The duty element of negligence focuses on whether the defendant's conduct foreseeably created a broader 'zone of risk' that poses a general threat of harm to others."); Kaisner v. Kolb, 543 So. 2d 732, 735 (Fla. 1989) ("Where a defendant's conduct creates a foreseeable zone of risk, the law generally will recognize a duty placed upon defendant either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that

---

[3] Liability in an FTCA action is determined in accordance with the law of the place where the government's act or omission occurred, which in this case is Maryland. Cole v. United States, 755 F.2d 873, 879 n.16 (11th Cir. 1985); 28 U.S.C. § 1346(b). The district court then found that Maryland law requires that tort actions be governed by the substantive law of the place of injury. See Johnson v. Oroweat Foods Co., 785 F.2d 503, 511 (4th Cir. 1986). As Mr. Steven's death occurred in Florida, the district court applied the tort law of Florida.

6

the risk poses."). The district court then examined this theory within the context of the "unreasonable risk of harm by affirmative act" rule embodied in §§ 302, 302A, and 302B of the Restatement and the special relationship requirement embodied in § 315 of the Restatement.[4]

The district court determined that §§ 302, 302A, and 302B of the Restatement most closely mirrored the position of Stevens. Sections 302A and 302B are special applications of § 302(b).

**Section 302**

A negligent act or omission may be one which involves an unreasonable risk of harm to another through either (a) the continuous operation of a force started or continued by the act or omission, or (b) the foreseeable action of the other, a third person, an animal, or a force of nature.

**Section 302A**

An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the negligent or reckless conduct of the other or a third person.

**Section 302B**

An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another

---

[4] Section 302 of the Restatement has been referenced by several courts in Florida, but does not appear to have been specifically adopted by the Florida Supreme Court. See e.g. K.M. ex rel. D.M. v. Publix Super Mkts., Inc., 895 So. 2d 1114 (Fla. Dist. Ct. App. 2005); Shurben v. Dollar Rent-A-Car, 676 So. 2d 467 (Fla. Dist. Ct. App. 1996).

through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal.

An illustration of the application of § 302B of the Restatement is then presented.

A leaves dynamite caps in an open box next to a playground in which small children are playing. B, a child too young to understand the risk involved, finds the caps, hammers one of them with a rock, and is injured by the explosion. A may be found to be negligent toward B.

Restatement (Second) Torts § 302B cmt. c (1965). The district court relied on § 302B to find that Stevens stated a potential claim against the government. As part of this analysis, the district court considered Florida case law establishing liability on the basis of affirmative acts which created an unreasonable risk of harm by creating a foreseeable opportunity for third party criminal conduct, even though there was no "special relationship" running between the actor and the victim or the third party criminal. In particular, the district court focused on Shurben v. Dollar Rent-a-Car, 676 So. 2d 467 (Fla. Dist. Ct. App. 1996), in which a British tourist was accosted while using a vehicle with license plates that made it easily recognizable as a rental car. The court in Shurben found that the rental car company had a duty to warn the customer of foreseeable criminal conduct, particularly in light of their superior knowledge of the danger.[5] Id. at 468. In a

_____

[5] Both the government and Battelle cite to K.M., 895 So. 2d at 1118, a case from Florida's fourth district court of appeal, for the proposition that Shurben, which was from the third district court of appeal, was a "special relationship" case because of the relationship between the car rental company and its customer. The court in Shurben, however, relied on

8

similar manner, the district court here concluded that the complaint sufficiently alleged that (1) the government should have known the risk of bioterrorism, particularly in light of the history of missing specimens, (2) a reasonable laboratory would understand the risk of harm unless adequate security procedures were implemented, and (3) the death of Mr. Stevens was a foreseeable consequence of the failure to use reasonable care in protecting against the possibility of an unauthorized interception and release of anthrax.

The district court then reviewed § 315 of the Restatement. As discussed above, § 315 requires the existence of a "special relationship" between the actor and the third person or the actor and the victim before imposing a duty to control the conduct of a third person as to prevent him from causing physical harm to the victim. Here, the government had argued that no such relationship existed, either between the government and the individual or group that mailed the anthrax or between the government and Mr. Stevens. The district court found, however, that Florida courts have expanded the categories of "special relationships" for purposes of liability beyond those few listed as examples in § 314A of the Restatement.[6]

§ 302B of the Restatement in reaching its decision, not § 315. As such, and because Shurben does not discuss the existence of a "special relationship" or make comment that the decision rested on the existence of such a relationship, we believe Shurben remains an important case for considering whether a duty exists here under § 302B of the Restatement.

[6] Section 314A lists the "special relations" triggering a duty as (a) common-carrier/passengers, (b) innkeeper/guests, (c) landowner/invitees, and (d) one who is required by

9

See Rupp v. Bryant, 417 So. 2d 658, 667 (Fla. 1982) (considering "'the sum total' of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection" in concluding that a school had a duty to students in a school group that met after hours and off-campus); Gross v. Family Servs. Agency, Inc., 716 So. 2d 337, 338 (Fla. Dist. Ct. App. 1998), aff'd sub nom., Nova Southeastern Univ., Inc. v. Gross, 758 So. 2d 86, 90 (Fla. 2000) ("There is no reason why a university may act without regard to the consequences of its actions while every other legal entity is charged with acting as a reasonably prudent person would in like or similar circumstances.").

Because Mr. Stevens did not fit within the "special relationships" described in § 314A of the Restatement or as recognized by existing Florida case law, the district court considered whether the relationship between the government and Mr. Stevens was one contemplated by § 315 of the Restatement. In this regard, the district court focused on In re September 11 Litigation, 280 F. Supp. 2d 279 (S.D.N.Y. 2003), a case brought against various airlines and airline security companies following the terrorist attacks of September 11, 2001, alleging claims of

law or who voluntarily takes custody of another under circumstances which deprive the other of his normal opportunities for protection. Section 314A makes clear, however, that "[t]he relations listed are not intended to be exclusive, and are not necessarily the only ones in which a duty of affirmative action for the aid or protection of another may be found." Restatement (Second) of Torts § 314A cmt. b (1965).

10

negligent security. Though this case did not utilize the Restatement (Second) of Torts, the factual situation was similar in that it involved an alleged failure to secure passenger planes from use by terrorists and an alleged awareness of the potential that planes could be used as weapons by terrorists. Considering these allegations, the district court in September 11 Litigation found that the defendants owed a duty of care to victims on the ground because they were in the best position to provide reasonable protection against hijackers. In a similar analysis, the district court here found that a "special relationship" existed between the government and Mr. Stevens because bioterrorism "presents a substantial elevation of risks," not only to those in the vicinity of the laboratory, but to the general public. Therefore, the government stood in the best position to prevent unauthorized interception and dissemination of the material and owed such a duty of care to Mr. Stevens.

Applying the same rational, the district court denied Battelle's motion and found that the allegations of negligent security sufficiently stated a claim under either § 302B or § 315 of the Restatement.

The government then moved for leave to seek reconsideration. In its motion, the government focused on K.M. ex rel. D.M. v. Publix Super Markets, Inc., 895 So. 2d 1114 (Fla. Dist. Ct. App. 2005), in which the court found § 302B of the Restatement inapplicable where a grocery store manager was charged with

11

failure to warn a subordinate employee of the known sexual predatory history of a

co-worker entrusted with the care of the employee's child.  In making its finding,

the court in K.M. relied on the principle that more restricted duties are applicable

where one merely omits to act.[7]   After considering the impact of K.M., the district

court here denied the government's motion, finding that the facts in this case

alleged the growing of anthrax, an affirmative act exposing certain persons to

"unreasonable risk of harm," rather than an omission as examined in K.M.  The

court, however, granted the government's request for certification of the order

denying the motion to dismiss for interlocutory appeal.  In so ruling, the court

noted:

> [A]pplication of Restatement of Torts (Second) § 302B negligence in
> the bioterrorism context finds no precedent in American
> jurisprudence.  Likewise, there is no precedent addressing the issue of
> whether a laboratory facility which grows and test ultra hazardous
> human viruses and germs stands in a 'special relationship' to members
> of the general public who are foreseeably placed at risk in the event of
> an unintentional or intentional release of toxins so as to justify
> imposition of § 315 negligence liability.

The district court, therefore, certified the following question to the Eleventh

Circuit.

---

[7] The court in K.M. cites comment a of § 302B, which notes that "[t]he duties of one who merely omits to act are more restricted, and in general are confined to situations where there is a special relationship between the actor and the other which gives rise to the duty."  K.M., 985 So. 2d at 1116-17.

12

Under Florida law, does a laboratory that manufactures, grows, tests and handles ultra-hazardous viruses and germs, having a history of missing or unaccounted for samples, owe a duty of reasonable care to members of the general public to avoid an unauthorized interception and dissemination of the biohazards, either (1) under 302B of the Restatement of Torts (Second), without the presence of an underlying § 315 "special relationship?" or (2) under application of § 315 of the Restatement, on the premise that it stands in "special relationship" with members of the general public foreseeably placed at risk of contamination in the event of an unintentional or intentional release of the biohazards?

## II. Appeal

On appeal, the government and Battelle argued again that the complaint alleged negligence by omission and a defendant has no duty to protect another person from the criminal acts of a third party, unless the defendant had a "special relationship" with the victim or with the perpetrator. In support of this argument, the government and Battelle argued that Mr. Stevens was simply a member of the general public and there is no duty to the public as a whole. See Storm v. Town of Ponce Inlet, 866 So. 2d 713, 715 (Fla. Dist. Ct. App. 2004); see also Vann v. Dep't of Corr., 662 So. 2d 339, 340 (Fla. 1995) ("A governmental duty to protect its citizens is a general duty to the public as a whole, and where there is only a general duty to protect the public, there is no duty of care to an individual citizen which may result in liability.") (quoting Everton v. Willard, 468 So. 2d 936, 938 (Fla. 1985)); Grunow v. Valor Corp., 904 So. 2d 551, 555 (Fla. Dist. Ct. App. 2005)

13

(refusing to impose liability on handgun distributor where wife of a teacher who was killed by a student with a handgun filed suit against the distributor for failing to sell the weapon with feasible safety mechanisms that would limit the possibility that the gun would end up in the hands of unauthorized persons likely to use them in criminal activity).

Stevens responded by arguing that the issue is not whether the defendants were liable for the criminal mailing of the anthrax, but, rather, their negligent maintenance of the materials. See McCain, 593 So. 2d at 503 ("Florida, like other jurisdictions, recognizes that a legal duty will arise whenever a human endeavor creates a generalized and foreseeable risk of harming others."). Stevens urged that by using anthrax, the government and Battelle created a risk that the ultra-hazardous materials, known to be used as a weapon, would be intercepted and disseminated, and they failed to exercise prudent foresight in securing the materials from such interception and dissemination. See id. ("[E]ach defendant who creates a risk is required to exercise prudent foresight whenever others may be injured as a result. This requirement of reasonable, general foresight is the core of the duty element."); see also Whitt v. Silverman, 788 So. 2d 210, 216-18 (Fla. 2001) (explaining that "this Court in McCain attempted to restate the general principles of negligence law and clarify the role that foreseeability plays in evaluating the

14

duty and proximate cause elements of a common law negligence claim.").  In particular, Stevens refers to Hewitt v. Avis Rent-A-Car System, Inc., 912 So. 2d 682, 686 (Fla. Dist. Ct. App. 2005), in which Avis had a history of cars being taken from its lot and "rented" by employees in "side deals."  Despite this knowledge, Avis did not implement security procedures to prevent the thefts and Hewitt was injured when she was involved in a collision with one of the stolen vehicles.  In finding that Avis may have owed a duty to Hewitt to secure its vehicles, the court stated that because of the circumstances of the case, including Avis's knowledge of previous thefts and the lack of safeguards to prevent such thefts, "the question whether the defendant's conduct created a foreseeable zone of risk, giving rise to a duty to lessen the risk by taking precautions to protect others from such risk, is one reserved for the fact finder."  Id.  Stevens then reiterated the argument that § 315 deals with failing to protect another or to control the conduct or a third party, while § 302 applies to negligent acts.  As evidence, Stevens referred to Comment a of § 302 of the Restatement.

> This Section is concerned only with the negligent character of the actor's conduct, and not with his duty to avoid the unreasonable risk. In general, anyone who does an affirmative act is under a duty to others to exercise the care of a reasonable man to protect them against an unreasonable risk of harm to them arising out of the act.  The duties of one who merely omits to act are more restricted, and in general are confined to situations where there is a special relation between the actor and the other which gives rise to the duty.

15

Restatement (Second) of Torts § 302 cmt. a (1965). Applying this distinction, Stevens argued that the claims here alleged the existence of a duty under § 302B of the Restatement to properly secure, track, and inventory the Anthrax being utilized by the laboratories, not to prevent the conduct of the third person who mailed the materials to American Media under § 315 of the Restatement.

The central issue here is what duties exist under Florida law to protect members of the public where an organization creates a significant risk by using anthrax or another ultra-hazardous material. Stevens alleges that the attacks occurred because an unknown third-party was able to obtain anthrax due to the failure of the defendants to secure their facilities. Although the Florida case law discussed above reveals some limits on negligence liability, it fails to fit neatly into the complex factual pattern at hand. Would a gun store owner who consistently left the door unlocked at night, knowing that guns had been stolen in the past, be found free from liability if an unknown third party was killed by a criminal using one of the stolen guns? Would a construction company that failed to increase security after dynamite was stolen on several occasions be found not liable if an unknown third party used the materials to blow up a building simply because there was no special relationship between the construction company and the thief or the construction company and the occupants of the demolished structure? As with the

16

question of what duties arise from the laboratory use of anthrax, Florida law does not appear to have addressed and decided these issues.

"Substantial doubt about a question of state law upon which a particular case turns should be resolved by certifying the question to the state supreme court." Jones v. Dillard's, Inc., 331 F.3d 1259, 1268 (11th Cir. 2003). The Florida Constitution allows this court to certify a question to the Florida Supreme Court if it "is determinative of the cause and for which there is no controlling precedent of the supreme court of Florida." Fla. const. art. V., § 3(b)(6). As we have found no such controlling precedent, we certify the following question to the Florida Supreme Court:

> Under Florida law, does a laboratory that manufactures, grows, tests or handles ultra-hazardous materials owe a duty of reasonable care to members of the general public to avoid an unauthorized interception and dissemination of the materials, and, if not, is a duty created where a reasonable response is not made where there is a history of such dangerous materials going missing or being stolen?

In certifying this question, we do not intend to restrict the issues considered by the state court and note that discretion to examine this issue and other relevant issues lies with the state court. See Miller v. Scottsdale Ins. Co., 410 F.3d 678, 682 (11th Cir. 2005) ("Our phrasing of the certified question is merely suggestive and does not in any way restrict the scope of the inquiry by the Supreme Court of Florida."). We also recognize that "latitude extends to the Supreme Court's restatement of the

17

issue or issues and the manner in which the answers are given." Swire Pac.

Holdings v. Zurich Ins. Co., 284 F.3d 1228, 1234 (11th Cir. 2002) (quoting

Martinez v. Rodriguez, 394 F.2d 156, 159 n.6 (5th Cir. 1968)).[8]

**QUESTION CERTIFIED.**

---

[8] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this court adopted as binding precedent all of the decisions that the former Fifth Circuit issued prior to October 1, 1981.