[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 29, 2008
THOMAS K. KAHN
CLERK

_____

No. 06-13254

_____

D. C. Docket No. 03-02353-CV-T-17-TBM

FEDERAL TRADE COMMISSION,

Plaintiff-Appellee,

versus

SHAUN OLMSTEAD,
JULIE CONNELL,

Defendants-Appellants,

versus

MARK BERNET,

Receiver-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(May 29, 2008)**

Before EDMONDSON, Chief Judge, KRAVITCH and ALARCÓN,[*] Circuit Judges.

PER CURIAM:

**CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF FLORIDA, PURSUANT TO FLA. R. APP. P. 9.150(a). TO THE SUPREME COURT OF FLORIDA AND ITS HONORABLE JUSTICES:**

In this case, we must decide whether, at the request of a judgment-creditor, a court may order a judgment-debtor to surrender all "right, title, and interest" in the debtor's single-member limited liability company ("LLC"), even though that LLC is not a party to the garnishment action. Because this question is a matter of Florida law, we certify the question to the Florida Supreme Court.

## I. Background

Shaun Olmstead, with the assistance of Julie Connell (together, "Defendants"), operated an advance-fee credit card scam. Through the corporate defendants, Peoples Credit First, LLC ("PCF") and Consumer Preferred, LLC ("CP"), Defendants mailed consumers over ten million solicitations. These

---

[*]Honorable Arthur L. Alarcón, United States Circuit Judge for the Ninth Circuit, sitting by designation.

solicitations created the impression that, in exchange for a payment of $45 or $49, a consumer would receive a "platinum" credit card like a VISA or MasterCard with a $5,000 credit line. More than 200,000 consumers purchased the credit cards; but the cards they received were not major credit cards like VISA or MasterCard. Instead, the cards were merely platinum-colored cards usable only for purchasing products from Defendants' merchandise catalog or website. Although some consumers used the cards to make purchases, a significant number of consumers claimed to have been misled and complained to PCF and CP as well as to local better business bureaus and state agencies.

The Federal Trade Commission ("FTC") filed this action, alleging that Defendants, including PCF and CP, violated Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive trade practices. The district court immediately issued an <u>ex parte</u> temporary restraining order ("TRO") freezing Defendants' assets and appointing a receiver over PCF and CP. Later, with the parties' consent, the district court approved a stipulated preliminary injunction extending the asset freeze and receivership provisions of the TRO.[1] At the receiver's request, the district court also entered a series of

---

[1]Among other things, the stipulated preliminary injunction directed the receiver to "[c]onserve, hold, and manage," "preserve the value of," and prevent the "unauthorized transfer, withdrawal, or misapplication" of the receivership assets.

3

orders extending the receivership to include several non-party LLCs in which either Olmstead or Connell was the sole member.[2] The court placed these single-member LLCs into receivership because Defendants' management of them violated the terms of the asset freeze.

The FTC then moved for summary judgment, which the district court granted, entering a judgment for injunctive relief and for more than $10 million in restitution against Defendants. The district court also entered an amended judgment, which included additional equitable relief. Defendants appealed the district court's grant of summary judgment to the FTC.[3]

Defendants did not seek a stay of execution; so, to satisfy the judgment partially, the FTC moved to compel Defendants to surrender their membership interests in their LLCs to the receiver. Defendants objected, asserting that the FTC only has the rights of an assignee under Florida law. The district court nevertheless granted the FTC's motion and compelled Defendants to "endorse and surrender to the Receiver, all of their right, title and interest" in their LLCs. A later order issued by the district court authorized the receiver to liquidate the

---

[2]These non-party, single-member LLCs are Dynamic Fulfillment & Services, LLC; Foundation Commercial Properties, LLC; Product Dynamics, LLC; SoHo Holdings, LLC; Generation Housing, LLC; and Nu Products, LLC. Each was organized under Florida law.

[3]A panel of this Court filed an unpublished opinion in No. 06-11827 on 19 July 2007, affirming the district court's judgment.

assets in Defendants' LLCs, which the receiver did through public auctions, and to pay the proceeds to the FTC.[4]  In this appeal, Defendants only challenge the district court's order requiring them to surrender the assets in their non-party, single-member LLCs to the receiver.

## II.  Discussion[5]

Under Rule 69 of the Federal Rules of Civil Procedure, proceedings in aid of judgment or execution are to be conducted in accordance "with the procedure of the state where the court is located."  Fed. R. Civ. P. 69(a)(1).  Defendants argue that the surrender order is in error because it is contrary to Florida's Limited

---

[4]According to the FTC, the proceeds from the auctions are being held in an interest-bearing account until the resolution of both this appeal and Defendants' appeal of the underlying summary judgment order, No. 06-11827, which this Court has already decided.

[5]We must first address the jurisdictional question that we earlier presented to the parties:

> Whether this Court has appellate jurisdiction given that, after the named defendants filed their June 2, 2006, notice of appeal, the district court granted, in part, the interested party's tolling motion for reconsideration of a related order.

Because the order issued after the notice of appeal involved completely different assets and different parties, the 3 May surrender order — which Defendants sought to appeal in their 2 June notice of appeal — is appealable according to the doctrine of practical finality.  See Atl. Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc., 890 F.2d 371, 376 (11th Cir. 1989) (treating orders as final that decide the right to contested property and that direct the property to be sold or delivered).  Accordingly, we conclude that this Court has appellate jurisdiction to consider the district court's 3 May surrender order.

Liability Company Act ("LLC Act"), particularly Fla. Stat. § 608.433(4). Section 608.433(4) provides:

> On application to a court of competent jurisdiction by any judgment creditor of a member, the court may charge the limited liability company membership interest of the member with payment of the unsatisfied amount of the judgment with interest. To the extent so charged, the judgment creditor has only the rights of an assignee of such interest. This chapter does not deprive any member of the benefit of any exemption laws applicable to the member's interest.

Because the plain language of this provision draws no distinction between single-member and multiple-member LLCs, Defendants contend that a charging order is the only remedy that a judgment-creditor may obtain against the membership interest of an LLC member, even if that member is the sole member of the LLC. Therefore, according to Defendants, the district court erred by ordering Defendants to surrender "all of their right, title and interest" in their single-member LLCs.

Although acknowledging that the plain text of the LLC Act does not distinguish between single-member and multiple-member LLCs, the FTC argues nevertheless that the overall statutory context "leads to the inevitable conclusion that a charging order is a senseless (and certainly not exclusive) remedy for a judgment-creditor against the membership interest in a single member LLC." The FTC points out that the charging order remedy originated in common law to

6

protect nondebtor partners from being forced unwillingly into partnership with a creditor. This rationale is lost in the context of single-member LLCs where, as here, no nondebtor members exist whose interests need protection.

In addition, the FTC argues that closely related provisions of the LLC Act demonstrate how Defendants' contended-for application of the charging order remedy to single-member LLCs would produce absurd results. For instance, the LLC Act provides that an assignee can become an LLC member with the consent of members other than the judgment-debtor. See Fla. Stat. §§ 608.432(1)(a), 608.433(1). The FTC contends that this provision, which allows assignees to become LLC members, is rendered purposeless for single-member LLCs unless they are treated differently than multiple-member LLCs: Treating single-member and multiple-member LLCs alike would produce the absurd result that assignees could become members in multiple-member LLCs but not in single-member LLCs.

Also, according to the FTC, the LLC Act directs that an LLC member ceases to be a member upon the assignment of that member's interest. See id. § 608.432(2)(c). But, if a single-member LLC were subject only to a charging order remedy, then the single-member LLC would be left without any members to manage it. Because an LLC must be dissolved "[a]t any time there are no

7

members," id. § 608.441(1)(d), the FTC contends that no member would remain with the authority to take the steps prescribed in Section 608.4431 to wind down the dissolved LLC. Given the foregoing, the FTC concludes that the "only way to harmonize these provisions into a coherent whole is to recognize that where, as here, an LLC has only one member, the assignment of that member's interest to a judgment-creditor necessarily enables the creditor to step in and liquidate the LLC's assets."

Neither party cites to Florida case law that directly addresses the application of Section 608.433(4) to single-member LLCs. Instead, both parties rely on well-established canons of statutory construction. Defendants contend, for instance, that "where a statute is clear and unambiguous a court will not look beyond the statute's plain language for legislative intent." Appellant Br. 12 (citing City of Miami Beach v. Galbut, 626 So. 2d 192, 193 (Fla. 1993)). The FTC, on the other hand, cites the "cardinal rule of statutory construction, that a legislature does not intend to create statutes that lead 'to an unreasonable or ridiculous result.'" Appellee Br. 13 (citing Galbut, 626 So. 2d at 193).

After considering the parties' arguments and given the absence of controlling case law on point, we conclude that Florida law is not sufficiently well-established for us to determine with confidence whether the district court's

surrender order is permissible under Section 608.433(4). The Florida Constitution authorizes this Court to certify a question about state law to the Florida Supreme Court if it "is determinative of the cause and for which there is no controlling precedent of the supreme court of Florida." Fla. Const. art. V, § 3(b)(6). Because we have found no such controlling precedent, we certify the following question to the Florida Supreme Court:

> Whether, pursuant to Fla. Stat. § 608.433(4), a court may order a judgment-debtor to surrender all "right, title, and interest" in the debtor's single-member limited liability company to satisfy an outstanding judgment.

> In certifying this question, "we do not intend to restrict the issues considered by the state court." Stevens v. Battelle Mem'l Inst., 488 F.3d 896, 904 (11th Cir. 2007); see also Miller v. Scottsdale Ins. Co., 410 F.3d 678, 682 (11th Cir. 2005) ("Our phrasing of the certified question is merely suggestive and does not in any way restrict the scope of the inquiry by the Supreme Court of Florida."). We are indeed mindful that "latitude extends to the Supreme Court's restatement of the issue or issues and the manner in which the answers are given." Stevens, 488 F.3d at 904 (internal quotation marks omitted). We ask for guidance.

**QUESTION CERTIFIED.**

9