[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 22-13645

Non-Argument Calendar

————————————————

GLORIA SMITH,

Plaintiff-Appellant,

*versus*

UNITED STATES OF AMERICA,

Defendant-Appellee,

DR. KENNEDY OKERE,

Defendant.

————————————————

Appeal from the United States District Court
for the Southern District of Georgia
D.C. Docket No. 4:20-cv-00286-RSB-CLR

_____

Before JORDAN, JILL PRYOR, and BRANCH, Circuit Judges.

PER CURIAM:

Appellant Gloria Smith brought a lawsuit against the United States under the Federal Tort Claims Act, alleging that Dr. Kennedy Okere, a doctor at the Curtis V. Cooper Primary Health Center ("CVC"), a federally-supported health center, committed medical malpractice. According to Smith, Okere prescribed a medication that caused her to have a severe allergic reaction and be hospitalized. To support her claim, Smith introduced testimony from an expert who opined that the medication Okere prescribed caused Smith's allergic reaction. But the district court excluded the expert's opinion under *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and then granted summary judgment to the United States. On appeal, Smith challenges the district court's decisions to exclude her expert's opinion and to grant summary judgment to the government. After careful consideration, we affirm.

**I.**

Smith, who suffers from high blood pressure, received medical care at CVC. In 2016, Smith was prescribed an ACE inhibitor, a type of medication used to treat high blood pressure. After taking

the medication, Smith had an allergic reaction and needed to go to the hospital.

In December 2018, Smith was seen by Okere at CVC. At that appointment, he prescribed the drug lisinopril, an ACE inhibitor, to treat her high blood pressure. Inexplicably, Okere selected this medication, despite multiple warnings in Smith's medical records stating that she was allergic to ACE inhibitors. For a four-month period, Smith dutifully took lisinopril every day.

In the afternoon of April 8, 2019, Smith experienced a severe allergic reaction. She felt her tongue swelling inside her mouth and her throat closing. She immediately went to the hospital.

At the hospital, Smith was diagnosed with angioedema. Angioedema is a condition that involves the swelling of tissue in the lips, tongue, face, hands, or feet. In rare cases, this swelling can lead to airway obstruction and potentially death.

At the hospital, Smith's condition initially improved. But she quickly took a turn for the worse. She was admitted to the intensive care unit and ended up in a medically induced coma. After approximately two weeks, Smith's condition improved, and she was released from the hospital. Medical records from the hospital show that Smith reported taking several medications at home on the day she experienced the allergic reaction, including lisinopril and aspirin.

Smith sued the United States, bringing a claim for medical malpractice under the Federal Tort Claims Act, 28 U.S.C. §§ 1346,

4                    Opinion of the Court                    22-13645

2671 *et seq.*[1] She alleged that Okere committed medical malpractice by prescribing her lisinopril, which caused her allergic reaction.

During the litigation, Smith identified Dr. James Cornwell, Jr., an experienced primary care physician, as an expert whose opinions she would be relying on in the case. In his expert report, Cornwell opined that Okere and CVC deviated from the applicable standard of care. He explained that it was a "breach of the standard of care to prescribe a medication to which the patient has a known allergy or adverse reaction." Doc. 33 at 8.[2]

In addition to providing an opinion on the standard of care, Cornwell also opined about causation. In his expert report, his entire opinion on causation consisted of one sentence, which stated that "[w]ithin a reasonable degree of medical certainty, the aforementioned negligent acts and omissions of CVC and . . . Okere caused . . . Smith to suffer a severe, life-threatening adverse

---

[1] The parties agree that the Federal Tort Claims Act provides the exclusive remedy for Smith's malpractice claim. Because Okere was a physician working as a contractor for CVC and the facility was a federally-supported health center, Okere is "deemed to be an employee of the Public Health Service." *See* 42 U.S.C. § 233(g)(1)(A). Federal law specifies that the Federal Tort Claims Act provides the "exclusive" remedy "for damage for personal injury . . . resulting from the performance of medical . . . functions . . . by any . . . employee of the Public Health Service." *Id.* § 233(a), (g)(1)(A); *see Allen v. Christenberry*, 327 F.3d 1290, 1294 (11th Cir. 2003) (describing statutory scheme).

[2] "Doc." numbers refer to the district court's docket entries.

reaction, including angioedema, for which she required emergency medical care and hospitalization." *Id.*

The government moved to exclude Cornwell's opinion about causation under *Daubert*. First, it argued that Cornwell was not qualified because he did not have any experience in determining the causes of angioedema. Second, it asserted that Cornwell's opinion about causation was not based on a reliable methodology. According to the government, Cornwell's "report display[ed] no methodology on causation" because his entire discussion of causation consisted of a single sentence and was entirely "devoid of factual or analytical support." Doc. 35 at 10 (internal quotation marks omitted). The government pointed out that Cornwell did not "note or rule out other possible causes for [Smith's] illness." *Id.* at 11.

The government argued that if Cornwell's opinion on causation was excluded, the court should grant summary judgment. It explained under the Federal Tort Claims Act, Georgia law governed because the allegedly negligent act—prescribing lisinopril—occurred in Georgia. *See* 28 U.S.C. § 1346(b)(1). And under Georgia law, to prove proximate causation for a medical malpractice claim, a plaintiff must present expert testimony. If Cornwell's opinion on causation was excluded, the government reasoned, it would be entitled to summary judgment because Smith would have no expert testimony regarding causation.

Smith opposed the government's motions to exclude Cornwell's causation opinion and for summary judgment. With her

opposition, she filed a supplemental affidavit from Cornwell. In the affidavit, he provided more information about his qualifications, including that he previously had treated between 20 and 30 patients suffering from angioedema.

He also provided more details about the relationship between ACE inhibitors and angioedema. He explained that it was "well accepted and documented in the medical community that lisinopril can cause angioedema" and that "0.1-0.7% [of] patients prescribed ACE inhibitors experience angioedema." Doc. 38-1 at 2. He also noted that "angioedema is the second most common adverse reaction to ACE inhibitors, behind dry cough." *Id.* at 2–3. And he observed that "patients who take ACE inhibitors can experience the adverse effect of angioedema several months or even up to a year after being prescribed the medication." *Id.* at 3.

Cornwell attached to his affidavit several medical publications on which he had relied. These publications stated that other medications, including nonsteroidal anti-inflammatory drugs such as aspirin, could cause angioedema. Despite relying on these publications that recognized other medications could cause angioedema, there was nothing in Cornwell's affidavit showing that he had considered whether another medication could have caused Smith's angioedema.

After reviewing Cornwell's affidavit, the government again argued that his causation opinion should be excluded under *Daubert*. It continued to assert that he was not qualified to opine about

the cause of Smith's angioedema and that his causation opinion was not based on a reliable methodology.

After the motions were fully briefed, a magistrate judge issued an order and report and recommendation. The magistrate judge granted the government's motion to exclude Cornwell's causation opinion under *Daubert*, concluding that Cornwell was "not qualified to offer the causation opinion and that the opinion [was] not reliable." Doc. 50 at 12.

Regarding qualifications, the magistrate judge found that Cornwell was not qualified to opine on the cause of Smith's angioedema. The magistrate judge accepted that based on his experience Cornwell was qualified to opine on whether Smith's allergic reaction qualified as angioedema. But the magistrate judge explained that "expertise in the diagnosis and treatment of a condition does not render a physician qualified to opine, in a scientifically reliable manner, about the causes of those medical conditions." *Id.* at 14 (internal quotation marks omitted). Because there was no indication that Cornwell had experience in determining the cause of a patient's angioedema, the magistrate judge concluded that Smith failed to carry her burden of establishing that Cornwell was qualified to opine on causation.

The magistrate judge also concluded that Cornwell's methodology was not reliable. The magistrate judge explained that Cornwell had not explained how he arrived at his conclusion about causation. Although there was a temporal relationship between Smith taking lisinopril and experiencing angioedema, the

magistrate judge explained that Cornwell could not conclude that lisinopril caused Smith's angioedema simply because she experienced the allergic reaction after taking the medication. The magistrate judge also pointed out that the medical publications Cornwell had relied on showed that a number of medications could cause angioedema. Because Cornwell failed "to even *consider* other factors that could have been cause the cause of [Smith's] angioedema," the magistrate judge found his methodology unreliable. *Id.* at 21 (emphasis in original).

After excluding Cornwell's causation opinion, the magistrate judge turned to the government's summary judgment motion. The magistrate judge explained that Georgia law applied to Smith's Federal Tort Claims Act claim and that, under Georgia law, to survive summary judgment Smith had to "present expert testimony to establish that the breach of the applicable standard of care was the proximate cause of" her injury. *Id.* at 27. Because Cornwell's opinion on causation had been excluded, the magistrate judge recommended that the district court grant summary judgment.

Smith objected to the magistrate judge's order and recommendation. On the *Daubert* motion, she argued the magistrate judge erred in determining that Cornwell was not qualified to render a causation opinion and that his opinion was unreliable. She also argued that because Cornwell's causation opinion should not be excluded, the district court should deny the government's summary judgment motion.

The district court overruled Smith's objections. The court began by reviewing the magistrate judge's order granting the *Daubert* motion. The court explained that it reviewed the magistrate judge's order under a deferential standard of review—asking whether the decision was clearly erroneous or contrary to law—because the *Daubert* motion was not a dispositive motion.

The district court then affirmed the magistrate judge's decision to exclude Cornwell's causation opinion for two independent reasons: (1) he was not qualified to opine on the cause of Smith's angioedema, and (2) his methodology was not reliable. The court explained that Cornwell's methodology was unreliable because there was "nothing to indicate that [] Cornwell considered *any* alternative cause of [Smith's] angioedema." Doc. 58 at 7 (emphasis in original). Although the district court reached this conclusion after applying a clearly erroneous standard, the court also stated that it would have reached the same conclusion under a *de novo* standard of review.

After affirming the magistrate judge's decision on the *Daubert* motion, the district court adopted the recommendation to grant the government's summary judgment motion. This is Smith's appeal.

**II.**

"We review *de novo* the district court's grant of summary judgment, construing the facts and drawing all reasonable inferences in favor of the nonmoving party." *Smelter v. S. Home Care Servs., Inc.*, 904 F.3d 1276, 1284 (11th Cir. 2018). Summary

judgment is appropriate if the record gives rise to "no genuine dispute as to any material fact," such that "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

We review for abuse of discretion a district court's decision to exclude an expert's testimony. *See St. Louis Condo. Ass'n, Inc. v. Rockhill Ins. Co.*, 5 F.4th 1235, 1242 (11th Cir. 2021). "The abuse of discretion standard allows a range of choice for the district court, so long as that choice does not constitute a clear error of judgment." *Carrizosa v. Chiquita Brands Int'l, Inc.*, 47 F.4th 1278, 1296 (11th Cir. 2022) (alteration adopted) (internal quotation marks omitted). "A district court necessarily abuses its discretion if it bases a ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Id.* (alteration adopted) (internal quotation marks omitted).

## IV.

Smith argues on appeal that the district court erred in excluding Cornwell's opinion on causation and in granting the government's motion for summary judgment. We address each issue in turn.

## A.

We begin with Smith's challenge to the district court's decision to grant the government's *Daubert* motion and exclude

Cornwell's expert testimony on causation. We cannot say that the district court abused its discretion.

"The admission of expert evidence is governed by Federal Rule of Evidence 702, as explained by *Daubert* and its progeny." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) (footnote omitted). Under Rule 702 and *Daubert*, in deciding whether to admit expert testimony, a district court acts act as a "gatekeep[er]." *Id.* (internal quotation marks omitted). To fulfill its obligation, a district court must engage in a "rigorous inquiry" and determine whether: (1) "the expert is qualified to testify competently regarding the matters he intends to address"; (2) "the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*"; and (3) the expert's testimony "assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *Id.* at 1291–92 (internal quotation marks omitted).

Regarding reliability, we have recognized that a district court "may exclude expert testimony that is imprecise and unspecific or whose factual basis is not adequate explained." *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1111 (11th Cir. 2005) (internal quotation marks omitted). "Because the task of evaluating the reliability of expert testimony is uniquely entrusted to the district court under *Daubert*, we give the district court considerable leeway in the execution of its duty." *Rink*, 400 F.3d at 1291 (internal quotation marks and citation omitted); *see United States v.*

*Pon*, 963 F.3d 1207, 1219 (11th Cir. 2020) (explaining that the "deference we show trial courts on evidentiary rulings is especially pronounced in the *Daubert* context, where the abuse of discretion standard places a heavy thumb . . . on the district court's side of the scale" (internal quotation marks omitted)). Of course, granting this "leeway is not the same thing as abdicating appellate responsibility." *Pon*, 963 F.3d at 1219–20 (internal quotation marks omitted).

Here, in excluding Cornwell's causation opinion, the district court found that his methodology was unreliable because he did not consider any alternative cause of Smith's angioedema. Smith does not dispute that to provide a reliable opinion on causation, an expert sometimes must expressly address and rule out other potential causes of the plaintiff's injury. But Smith says that Cornwell was not required to rule out alternative causes of Smith's angioedema in this case because there was "*no evidence* in this case of any cause of . . . Smith's angioedema[] other than the admittedly mis-prescribed lisinopril." Appellant's Br. at 37–38 (emphasis added). We disagree.

The district court did not abuse its discretion when it excluded Cornwell's opinion as unreliable based on his failure to consider alternative possible causes of Smith's angioedema.[3] Certainly,

---

[3] The district court gave two separate reasons for excluding Cornwell's causation opinion: because (1) it was unreliable, and (2) Cornwell was not qualified to opine on causation. Because we conclude that the district court did not abuse its discretion in excluding Cornwell's opinion as unreliable, we do not

ACE inhibitors, like lisinopril, may cause angioedema. But the record shows that ACE inhibitors are not the only medications that cause angioedema. Indeed, the medical publications that Cornwell relied upon show that other drugs, including non-steroidal anti-inflammatory drugs (like aspirin), may cause angioedema. And the record reflects that Smith took both lisinopril and aspirin at home on the day of her allergy attack in 2019. Although Smith apparently ingested multiple drugs that could cause angioedema, there is nothing in Cornwell's initial expert report or his affidavit that indicates that he considered whether anything other than lisinopril caused Smith's angioedema. In these circumstances, we cannot say that the district court made a clear error of judgment when it concluded that Cornwell's causation opinion was unreliable. *See Williams v. Mosaic Fertilizer, LLC*, 889 F.3d 1239, 1250 (11th Cir. 2018) (affirming district court decision to exclude expert opinion that "failed to meaningfully address other potential causes of [the plaintiff's] condition" because "[t]his fundamental methodological failure undermined the soundness of [the expert's] causation opinions").[4]

---

decide whether the district court abused its discretion in concluding that Cornwell was not qualified to opine on causation.

[4] On appeal, Smith also argues that the district court erred in granting the government's *Daubert* motion because the court reviewed the magistrate judge's decision to grant the motion under a clearly erroneous, instead of a *de novo*, standard. Even assuming that the district court was required to review the magistrate judge's *Daubert* ruling under a *de novo* standard of review, there

**B.**

Having concluded that the district court did not abuse its discretion in excluding Cornwell's opinion on causation, we also affirm the district court's decision to grant summary judgment to the government.

In this action, Smith brought a claim against the government under the Federal Tort Claims Act for medical malpractice. Liability under the Federal Tort Claims Act is "determined in accordance with the law of the place where the government's act or omission occurred." *Stevens v. Battelle Mem'l Inst.*, 488 F.3d 896, 899 n.3 (11th Cir. 2007); *see* 28 U.S.C. § 1346(b)(1). Because Okere's acts and omissions occurred in Georgia, Georgia law governs.

Under Georgia law, to prevail on a medical malpractice claim, a plaintiff must show: "(1) the duty inherent in the health care provider-patient relationship; (2) breach of that duty by failing to exercise the requisite degree of skill and care; and (3) that this failure is the proximate cause of the injury sustained." *Knight v. W. Paces Ferry Hosp., Inc.*, 585 S.E.2d 104, 105 (Ga. Ct. App. 2003). Georgia law requires the plaintiff to present expert testimony establishing that the medical professional's breach of the standard of care was the proximate cause of her injury. *See Porter v. Guill*, 681 S.E.2d 230, 235 (Ga. Ct. App. 2009). Given the exclusion of Cornwell's causation opinion and Smith's failure to present any other expert

was no error here. In its order, the district court expressly stated that even under a *de novo* standard and considering the entire record, it would reach the same conclusion.

testimony on this issue, it follows that the government was entitled to summary judgment. *See McDowell v. Brown*, 392 F.3d 1283, 1302 (11th Cir. 2004) (affirming grant of summary judgment on medical malpractice claim arising under Georgia law after opinions from plaintiffs' experts were excluded under *Daubert*).

**AFFIRMED.**