United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 10, 2004**

Charles R. Fulbruge III
Clerk

REVISED AUGUST 31, 2004

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

–––––––––––––––––

03-41634

–––––––––––––––––

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

LARRY D. REYNOLDS,

Defendant-Appellant.

–––––––––––––––––

Appeal from the United States District Court
for the Eastern District of Texas

–––––––––––––––––

Before DAVIS, EMILIO M. GARZA, and PRADO, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

The defendant was convicted of threatening to use weapons of mass destruction in violation of 18 U.S.C. § 2332a. In this appeal he argues that the evidence was insufficient to prove beyond a reasonable doubt either that he actually made a "threat" to use a weapon of mass destruction or that this threat affected interstate commerce. The defendant also argues that § 2332a is an unconstitutional use of Congress's powers under the Commerce Clause. The defendant's arguments are without merit, and we affirm.

-1-

I.

In the fall of 2001, the defendant, Larry D. Reynolds (Reynolds), was involved in an ongoing dispute with his mortgage company, Countrywide Mortgage (Countrywide). Reynolds was delinquent on his mortgage payments and Countrywide was considering foreclosure. On October 31, 2001, Reynolds called Countrywide from his office in Des Moines, Iowa, and attempted to access Countrywide's automated account system to review the status of his loan. Reynolds's delinquency prohibited him from using the automated system, and instead he was transferred to a customer service representative in Plano, Texas. Upon connecting with the operator, Reynolds yelled into the phone, "I just dumped anthrax in your air conditioner." The operator immediately contacted security. Shortly thereafter Countrywide security determined that the threat was not credible and decided not to evacuate the building.

Reynolds was subsequently arrested and charged with threatening to use a weapon of mass destruction in violation of 18 U.S.C. § 2332a. A jury convicted Reynolds and he was sentenced to 51 months in prison.

II.

In this appeal Reynolds contends that the evidence was insufficient to support his conviction. Where a defendant challenges the sufficiency of the evidence on which his conviction was based, this court must determine whether "after viewing the

-2-

evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *United States v. Daniel*, 957 F.2d 162, 164 (5th Cir. 1992).

## A.

Reynolds first argues that the term "threaten to use" in 18 U.S.C. § 2332a suggests that only threats of future use of a weapon of mass destruction are prohibited by the statute.[1] Reynolds argues that because his statement indicated a past act, i.e, that he had already dumped anthrax into the air conditioner, it cannot be construed as a threat under the statute.

This court has not previously considered what constitutes a "threat" under § 2332a. In the absence of a statutory definition, terms are given their ordinary, contemporary, common meaning.

---

[1] 18 U.S.C. 2332a provides, in pertinent part:

(a) A person who, without lawful authority, uses, <u>threatens</u>, or attempts or conspires <u>to use, a weapon of mass destruction</u> []-

\* \* \*

(2) <u>against any person within the United States, and</u> the results of such use affect interstate or foreign commerce or, <u>in the case of a threat</u>, . . . <u>would have affected interstate or foreign commerce</u>;

\* \* \*

shall be imprisoned for any term of years or for life[.]

*United States v. Singleton*, 946 F.2d 23, 25 (5th Cir. 1991).

Blacks Dictionary defines a "threat" as "[a] communicated intent to inflict harm or loss on another or on another's property[.]"  Blacks Law Dictionary (8th ed. 2004).  Webster's defines a "threat" as "[a]n expression of an intention to inflict something harmful."  Webster's II, New Riverside University Dictionary (Anne H. Soukhanov ed., Houghton Mifflin Company 1984). Furthermore, we have defined the term "threat" in 18 U.S.C. §875, which prohibits threatening communications made through interstate commerce.  We held under § 875(c) that a communication is a threat if "in its context [it] would have a reasonable tendency to create apprehension that its originator will act according to its tenor." *United States v. Meyers*, 104 F.3d 76, 79 (5th Cir. 1997); *see also United States v. Redden*, 81 Fed.Appx. 96, 2003 WL 22682457 (9th Cir. 2003) (unpublished)(defining "threat" under 18 U.S.C. § 175). We have found no credible support for a definition of "threat" that requires reference to a future act. We therefore conclude that the proper definition of "threaten" in §2332a is that adopted by this court in *Meyers*: a communication that has a reasonable tendency to create apprehension that originator of the communication will act as represented.  Under the circumstances of this case a rational trier of fact could have found beyond a reasonable doubt that Reynolds "threatened" to use anthrax.

B.

-4-

Reynolds next argues that the evidence was insufficient to prove beyond a reasonable doubt that the threat would have affected interstate commerce. In the case of threats to use weapons of mass destruction, the Government must prove as an element of the offence that the "use . . . would have affected interstate or foreign commerce." 18 U.S.C. § 2332a(a)(2). Reynolds argues that because there was no evacuation or stoppage of work at the company, the evidence is insufficient to establish the interstate commerce requirement of the statute.

This argument is without merit. The statute merely requires that there would have been an effect on interstate commerce had the threat been carried out. Countrywide is a national company; had Reynolds carried out his threat, the closing of Countrywide's office definitely would have affected Countrywide's customers in numerous different states. For these reasons, we conclude that the evidence is sufficient to support Reynold's conviction.[2]

_____

[2]Reynolds also argues that under *United States v. Morrison*, 529 U.S. 598 (2000), § 2332a violates the Commerce Clause. Reynolds did not challenge the constitutionality of § 2332a in the district court, so our review is limited to plain error. *United Stated v. Lankford*, 196 F.3d 563, 570 (5th Cir. 1999). Under plain error, Reynolds must demonstrate that the district court committed an obvious error that affected his substantial rights and that seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id*.(quotations omitted).

The district court committed no error, plain or otherwise. *Morrison* simply reaffirmed the position of the Supreme Court that Congress cannot use the Commerce Clause to regulate non-economic, criminal conduct. See *Morrison*, 529 U.S. at 610. Clearly the use of weapons of mass destruction could seriously affect interstate commerce. Section 2332a is therefore a constitutional exercise of Congress's powers under the Commerce Clause.

                              III.

     For the reasons stated above, the judgment of the district
court is affirmed.

AFFIRMED.