FILED
United States Court of Appeals
Tenth Circuit

October 18, 2007

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

––––––––––––––––––––––––––––

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

WILLIAM MITCHELL CHAPPLE,

    Defendant-Appellant.

No. 07-7015
(D.Ct. No. 04-CR-106-01-P)
(E.D. Okla.)

––––––––––––––––––––––––––––––

**ORDER AND JUDGMENT**[*]

Before **TACHA**, Chief Circuit Judge, and **BARRETT** and **BRORBY**, Senior Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Appellant William Mitchell Chapple was convicted by a jury of two counts

––––––––––––––––

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

of mailing a threatening communication in violation of 18 U.S.C. § 876(c).  He now appeals his concurrent thirty-three-month sentences, arguing imposition of a variance six months higher than the advisory United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") range of twenty-one to twenty-seven months is substantively unreasonable under the 18 U.S.C. § 3553(a) sentencing factors.  We exercise jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291 and affirm Mr. Chapple's concurrent sentences.

## I.  Factual and Procedural Background

The relevant facts are primarily outlined in this court's previous decision involving Mr. Chapple's initial appeal of his thirty-three-month sentence, which, together with the record on appeal, we summarize as follows.  *See United States v. Chapple*, 198 Fed. Appx. 745 (10th Cir. Oct. 6, 2006) (unpublished op.).  Between October 1 and October 4, 2004, two manila envelopes containing a white powdery substance were mailed from two different states to the same business located in Muskogee, Oklahoma.  *Id.* at 747.  An employee who handled the first envelope, postmarked from Colorado Springs, Colorado, noticed it was leaking a powder and summoned the postal carrier, who, at the suggestion of the United States Postal Service, contacted the Muskogee Police Department, which, in turn, sent police officers to collect the envelope and submit it to the Oklahoma Department of Health laboratory for analysis.  *Id.*

A few days later, employees at the Muskogee Post Office intercepted the second manila envelope, which was mailed from Syracuse, Kansas, and addressed to the same business. *Id.* Because the postal employees believed the envelope contained an unknown substance, a postal inspector transported it to the same Oklahoma lab for analysis. *Id.* Ultimately, the lab determined both envelopes contained non-biohazardous powders. *Id.*

The postal inspector investigating the matter interviewed the owner of the business, Christine Cannarsa, who believed the sender was Mr. Chapple, a former classmate who had been stalking her for approximately eighteen months to two years in an attempt to establish a romantic relationship with her. *Id.* She advised she previously filed reports with the Muskogee Police Department and hired an attorney, who advised Mr. Chapple to stop sending communications to Ms. Cannarsa. *Id.* When the inspector interviewed Mr. Chapple, he confessed to sending the envelopes and explained he intended the powder, obtained from a broken road flare, to scare Ms. Cannarsa. *Id.*

Following his arrest, Mr. Chapple was convicted by a jury of two counts of mailing a threatening communication in violation of 18 U.S.C. § 876(c). *Id.* The probation officer preparing the presentence report interviewed Ms. Cannarsa and the employee who handled the first envelope. Ms. Cannarsa described Mr.

Chapple's contact toward her for the prior eighteen months, which included correspondence he sent her that could be characterized as love letters and poems; however, one particular letter made a troubling statement indicating that everyone he had loved was now dead, which greatly bothered her. Ms. Cannarsa explained that while she was initially afraid of Mr. Chapple, she became terrified after the first suspect envelope arrived, and she outlined in great detail the negative impacts on her life caused by his mailings and having to testify against him at trial, as well as the various safety and other measures she had taken – all of which affected her personally and professionally.[1]

Ms. Cannarsa's employee told the probation officer she was extremely fearful for her health until identification of the envelope's contents. She also detailed the effect Mr. Chapple's actions had on her with respect to her fears for her personal safety and possible retribution against her after she testified against him.

In preparing the presentence report, the probation officer calculated the Guidelines sentencing range and recommended increasing the base level of twelve

[1] Because Mr. Chapple does not claim the district court erred in considering the psychological and other negative impacts the mailings had on Ms. Cannarsa for the purpose of imposing a variance under § 3553(a), we decline to outline them here, other than to note they were substantial and continuing.

with a two-level enhancement under U.S.S.G. § 3D1.4(a).[2] Thus, the presentence report assigned Mr. Chapple a total offense level of fourteen, which, together with his criminal history category of IV, resulted in a Guidelines range of twenty-seven to thirty-three months imprisonment. *Id.* at 747-48. While Mr. Chapple objected to certain dates provided in the presentence report, he did not otherwise object to the facts presented, including those regarding his prior conduct toward Ms. Cannarsa or the effect of the instant mailings on her or her employee. Following a sentencing hearing, the district court imposed a term of imprisonment of thirty-three months for each count, to run concurrently. *Id.* at 748.

On appeal, this court remanded with instructions to vacate Mr. Chapple's sentence and resentence him, after determining the district court improperly applied the two-level enhancement. *Id.* at 751. We rejected the government's argument that two direct victims existed for the purpose of considering the counts separately for application of the § 3D1.4(a) enhancement; instead, we identified Ms. Cannarsa as the intended recipient and direct victim and determined her employee was an indirect or secondary victim who could not be considered under the contested Guideline, § 3D1.2. *Id.* at 750-51.

---

[2] The probation officer recommended this increase after determining the offense level for mailing a threatening communication was twelve, concluding the two mailings should be grouped separately, and then relying on U.S.S.G. § 3D1.4(a) to apply a two-level upward adjustment, for a combined offense level of fourteen. *See Chapple*, 198 Fed. Appx. at 747-48.

Following our remand, the district court provided notice to the parties it was considering imposing a variance above the amended advisory Guidelines range of twenty-one to twenty-seven months imprisonment. It explained a variance was necessary in light of the serious nature of the crime and the psychological trauma to the direct and indirect victims, and in light of the current atmosphere of heightened vigilance placing all citizens on notice of terrorist activity. Mr. Chapple contested the proposed variance, after which the government filed a response in support of a variance.

At a sentencing hearing held February 12, 2007, and after allowing the parties an opportunity to present argument, the district court imposed a sentence of thirty-three months on each count, to run concurrently. In "formulating the sentence imposed," it explained it had considered the amended advisory Guidelines calculations together with the nature and circumstances of the case, including the fact Mr. Chapple had extensively stalked and terrorized Ms. Cannarsa, culminating in the mailing of two envelopes containing an unknown powder resembling a biohazardous substance meant to instill fear and terror in the mind of the recipient. It also noted the Guidelines failed to consider the impact of Mr. Chapple's actions on the indirect victims, including the employee who received the initial envelope, the postal worker who delivered that envelope, the law enforcement officers who responded, and the lab technicians, each of whom

went through a period of unknowing and likely psychological anguish after contact with the substance until finding out it was not harmful. It also pointed out Mr. Chapple took "advantage of a point in time that the citizens of this nation were already functioning on a heightened fear of terrorist activity." Finally, it noted it considered the sentencing factors in 18 U.S.C. § 3553(a) and concluded the sentence reflected the seriousness of the offense, promoted respect for the law, provided just punishment for the offense, afforded adequate deterrence to criminal conduct, protected the public from further crimes by Mr. Chapple, and provided correctional treatment in the most effective manner.

## II. Discussion

Mr. Chapple now appeals his sentence, arguing it is unreasonable because the district court improperly applied a six-month variance above the advisory Guidelines range. In support, he discredits each of the reasons for the variance, suggesting the district court erred in: 1) concluding he stalked and terrorized the victim based merely on love letters and poems sent to her, which is non-criminal and irrelevant conduct; 2) considering his prior stalking conduct toward Ms. Cannarsa, which is unrelated to the offense charged; 3) failing to explain why the psychological harm to Ms. Cannarsa's employee justified a variance; 4) considering harm to the other indirect victims, which was unsupported by any proof; 5) considering the fact his crime involved two mailings, which is

insufficient under the Guidelines for a "variance"; and 6) concluding he took advantage of the country's fear of terrorism, which he claims is irrelevant since the mailings "occurred three years after 9-11." While Mr. Chapple acknowledges he did not preserve a vindictiveness claim in district court, he submits the record supports a presumption of vindictiveness, as well as actual vindictiveness, given the district court gave him the same thirty-three-month sentence originally imposed.[3]

In considering Mr. Chapple's sentence on appeal, "we review a district court's sentence for abuse of discretion, asking whether it is reasonable under the § 3553(a) factors." *United States v. Garcia-Lara*, ___ F.3d ___, ___, 2007 WL 2380991, at *1 (10th Cir. Aug. 22, 2007) (slip op.). We employ an abuse of discretion standard by reviewing a district court's factual findings for clear error. *Id*. at *2. The § 3553(a) factors which guide the reasonableness inquiry "include the nature of the offense and characteristics of the defendant, as well as the need for the sentence to reflect the seriousness of the crime, to provide adequate deterrence, to protect the public, and to provide the defendant with needed training or treatment ...." *United States v. Kristl*, 437 F.3d 1050, 1053 (10th Cir. 2006) (*per curiam*). While we defer to the district court's application of these

---

[3] Mr. Chapple does not contend, and the record does not demonstrate, reasonable notice of the variance was not provided. He also does not contest the method of calculation, but only the substantive reasonableness of the sentence.

factors, we will not exercise deference if it commits legal error, such as giving one factor too much weight, disregarding another, or ignoring or misinterpreting applicable reasonableness case law. *See Garcia-Lara*, 2007 WL 2380991, at *2. Thus, we defer to the district court's exercise of discretion within the bounds of reasonableness. *Id.*

The Supreme Court, in *Rita v. United States*, ___ U.S. ___, 127 S. Ct. 2456 (2007), made clear a sentence falling outside the Guidelines range, like the one at issue here, is not per se entitled to a "presumption of unreasonableness." *Id.* at 2467; *Garcia-Lara*, 2007 WL 2380991, at *3. Rather, a court may, in its discretion, conclude a non-Guidelines sentence best serves the purpose of the § 3553(a) sentencing factors. *Garcia-Lara*, 2007 WL 2380991, at *4. But if it disregards or gives too little weight to the Guidelines factors, it must find reasonable justification for doing so under those factors. *Id.* "The farther the court diverges from the advisory guideline range, the more compelling the reasons for the divergence must be." *Id.* (quotation marks, alterations, and citation omitted). On the other hand, a lesser but still "significant" variance needs only "sufficient explanation and justification ...." *Id.* "To assess the magnitude of a variance, we look to the difference between the advisory Guidelines range and the sentence imposed in terms of both percentage and absolute number of months." *Id.*

We begin by assessing the magnitude of the complained-of variance. Here, the variance is six months above the Guidelines range of twenty-one to twenty-seven months, which constitutes a twenty-two-percent increase above the highest Guidelines range of twenty-seven months. Even under the increased scrutiny given lesser but still significant variances, we believe the sentence imposed was reasonable based on the sufficient explanation and justification provided by the district court in conjunction with the § 3553(a) factors.

First, in regard to the district court's consideration of Mr. Chapple's prior conduct in stalking and terrorizing Ms. Cannarsa, it did so in determining the nature of the offense under § 3553(a). While Mr. Chapple implies no evidence supports the district court's conclusion he stalked Ms. Cannarsa, he did not object to the facts presented in the presentence report. "It is well established that the sentencing court is entitled to rely on uncontested facts contained in the [presentence report] for certain sentencing purposes," including to draw conclusions about the nature of the offense and the defendant's characteristics relevant to the sentencing factors in 18 U.S.C. § 3553(a). *United States v. Mateo*, 471 F.3d 1162, 1166-67 (10th Cir. 2006), *cert. denied,* 127 S. Ct. 2890 (2007). In addition, while Mr. Chapple asserts the district court determined he stalked and terrorized Ms. Cannarsa based merely on love letters and poems, it is clear its conclusion was based on the totality of his conduct, which resulted in her fearing

for her personal safety even before the mailing of the two threatening envelopes occurred. Indeed, this court previously determined "it is undisputed that Ms. Cannarsa was the person Chapple had been stalking and who Chapple was seeking to threaten [or] intimidate." *Chapple*, 198 Fed. Appx. at 750. To now argue no evidence established he stalked Ms. Cannarsa is extremely unpersuasive. Ms. Cannarsa testified at trial, and while neither party furnished the transcript of that testimony, it is evident the district court credited her testimony and did not rely solely on the presentence report to conclude Mr. Chapple stalked her.

In addition, the fact Mr. Chapple was never previously arrested or convicted for stalking Ms. Cannarsa did not prevent the district court from considering such prior conduct in conjunction with the § 3553(a) factors. Instead, "conduct that is not formally charged or is not an element of the offense of conviction may enter into the determination of the applicable guideline sentencing range." *United States v. Allen*, 488 F.3d 1244, 1255 (10th Cir. 2007) (quotation marks and citation omitted). However, such conduct must relate to the offense of the conviction. *Id.* Having already determined Mr. Chapple "stalked" Ms. Cannarsa, whom he "was seeking to threaten [or] intimidate," *Chapple*, 198 Fed. Appx. at 750, it is apparent his prior conduct culminated in the instant offense, which he admitted was intended to scare her. Thus, we disagree with Mr. Chapple's contention that his prior conduct, in which he sent at least one

-11-

worrisome letter to Ms. Cannarsa, was not related to the instant offense of sending threatening communications. Accordingly, the district court did not err in considering such prior conduct as part of the nature of his offense.[4]

Next, we note Mr. Chapple does not argue in his appeal brief that the district court erred in considering the psychological and other negative impacts the mailings had on Ms. Cannarsa for the purpose of imposing a variance under § 3553(a). As to her employee, we believe the uncontested facts in the presentence report sufficiently establish the psychological and other negative impacts the mailings had on her for the purpose of imposing a variance under § 3553(a). Like Ms. Cannarsa, she testified at trial, and it is evident the district court credited her testimony. While this court previously determined U.S.S.G. § 3D1.4(a) did not apply to Ms. Cannarsa's employee, an indirect victim, for the purpose of applying the two-level upward departure, we did not preclude the district court from considering the impact of Mr. Chapple's mailing on that same employee under the § 3553(a) sentencing factors for the purpose of applying a

_____

[4] In inferring the district court erred in considering his prior stalking conduct toward Ms. Cannarsa, Mr. Chapple summarily points out the Guidelines already contemplate an upward departure for "extreme conduct" under § 5K2.8, which the presentence report and district court did not consider. However, it is clear Mr. Chapple raised this issue prior to sentencing, and by failing to apply § 5K2.8, it is apparent the district court did not believe his conduct warranted application of that Guideline, but instead considered such conduct as one of the circumstances supporting a variance.

variance.[5]

As to the other individuals negatively affected by Mr. Chapple's mailings, we recognize the threat of biohazardous terrorism reached its zenith in the fall of 2001 – three years before his mailings occurred.[6] However, a number of cases since 2001 establish a continuation of terror-related threats involving substances meant to resemble anthrax or other biohazardous substances.[7] In addition, it is self-evident that this country, since 2001, continues to experience a heightened

[5] As part of his argument, Mr. Chapple suggests the district court cannot consider psychological injury to indirect victims because U.S.S.G. § 5K2.3 only proscribes an upward departure for direct victims who suffer extreme psychological injury. However, even if, as Mr. Chapple contends, § 5K2.3 does not apply to indirect victims, the district court was not prevented from considering harm to them in the form of a variance under § 3553(a).

[6] *See, e.g., Stevens v. Battelle Mem'l Inst.*, 488 F.3d 896, 898 (11th Cir. 2007) (pointing out in the fall of 2001 an unknown individual or group mailed letters containing anthrax to recipients in Florida, New York, and Washington, D.C.); *Hatfill v. The New York Times Co.*, 427 F.3d 253, 254 (4th Cir. 2005) (*per curiam*) (explaining "[i]n the aftermath of the September 11 attacks, the nation was alerted to the fact that someone was sending letters laced with anthrax through the mails. The letters were not simply directed at public officials but apparently at private individuals as well. Those who handled mail on a regular basis were concerned for their safety, and even ordinary residents were advised to take special precautions when opening their mail.").

[7] *See, e.g., United States v. Evans*, 478 F.3d 1332, 1336 (11th Cir. 2007), *cert. denied*, __ S. Ct. __, 2007 WL 2064253 (Oct. 1, 2007) (No. 07-5316); *United States v. Dudley*, 463 F.3d 1221, 1224 (11th Cir. 2006)*; United States v. Davila*, 461 F.3d 298, 299-300 (2d Cir. 2006), *cert. denied*, 127 S. Ct. 1485 (2007); *United States v. Scott*, 441 F.3d 1322, 1324 (11th Cir. 2006); *United States v. Guevara*, 408 F.3d 252, 255 (5th Cir. 2005); *United States v. Reynolds*, 381 F.3d 404, 405 (5th Cir. 2004).

fear of terrorist activity, and individuals who believe they have been in contact with biohazardous substances, like anthrax, continue to fear for their personal health and safety. While no evidence was presented establishing the impact of Mr. Chapple's mailings on the other individuals who handled the envelopes, the uncontested facts in the presentence report indicate the mail carrier, Muskogee police officers, the postal inspector, postal workers, and employees with the Oklahoma Health Department all came in contact with an envelope they knew was leaking an unidentified substance. Therefore, it was not unreasonable for the district court to make an inference that those who handled the envelopes likely had concern for their physical safety and well-being until the substance was identified as not harmful. After providing Mr. Chapple notice of its intention to consider this circumstance and an opportunity to present argument, it was appropriate for the district court to consider it as part of the nature of Mr. Chapple's offense for the purpose of determining whether the advisory Guidelines sentencing range met the § 3553(a) factors.

While Mr. Chapple generally complains the Guidelines preclude the district court from considering the mailings separately or their impact on indirect victims, this case does not involve an upward "departure" under the Guidelines, as did his prior appeal. Rather, as the district court explained, it applied a "variance" under § 3553(a), due to the failure of the Guidelines to take into account the effect of

-14-

both mailings on the indirect victims.  In other words, having been precluded from applying an upward "departure" based on the impact at least one mailing had on an indirect victim, on remand the district court applied an upward "variance" to take into account a circumstance which the Guidelines did not.  As the district court suggested, Mr. Chapple's offense of mailing threatening communications did not impact only the intended recipient, Ms. Cannarsa, but many more individuals – a situation the Guidelines did not contemplate.  Like the district court, we believe Mr. Chapple's prior stalking conduct, together with the negative impact his mailings had on Ms. Cannarsa and the multiple other individuals who handled the envelopes, is sufficient, for the purpose of applying a six-month upward variance, to distinguish Mr. Chapple's offense from that of an ordinary defendant who mails a threatening communication.  While we previously determined Mr. Chapple's thirty-three-month sentence fell "clearly outside of the national norm established by the Guidelines for the crimes of conviction," *Chapple*, 198 Fed. Appx. at 751 (quotation marks and citation omitted), we now conclude a thirty-three-month sentence is reasonable based on the district court's sufficient explanation and justification in conjunction with § 3553(a).

Finally, as previously indicated, the district court stated a thirty-three-month sentence was reasonable after considering all of the sentencing factors under 18 U.S.C. § 3553(a).  Thus, it does not appear it abused its discretion or

-15-

otherwise impermissibly gave any one factor too much weight, disregarded another factor, or ignored or misinterpreted applicable reasonableness case law. We defer to the district court's exercise of discretion in imposing an upward six-month variance, which we believe is within the bounds of reasonableness. *Garcia-Lara*, 2007 WL 2380991, at \*2. Based on this determination and the fact Mr. Chapple did not preserve a vindictiveness claim, we decline to address his vindictiveness argument.

### III.  Conclusion

For these reasons, we **AFFIRM** Mr. Chapple's concurrent sentences.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge