[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 07-10435

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 23, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 06-00123-CV-4-SPM-WCS

FLORIDA ASSOCIATION OF PROFESSIONAL
LOBBYISTS INC.,
a Florida not for profit corporation,
SPEARMAN MANAGEMENT COMPANY,
a Florida corporation,
GUY M. SPEARMAN, III,
a natural person,
RONALD L. BOOK, PA,
a Florida professional association,
RONALD L. BOOK,
a natural person,

Plaintiffs-Appellants,

versus

DIVISION OF LEGISLATIVE INFORMATIONSERVICES
OF THE FLORIDA OFFICE OF
LEGISLATIVE SERVICES, a Florida state agency,
THE FLORIDA COMMISSION ON ETHICS,
an independent constitutional commission,
TOM LEE,
as president of the Florida Senate,
ALLAN BENSE,
as speaker of the Florida House of Representatives,

Defendants-Appellees,

Appeal from the United States District Court
for the Northern District of Florida

_____

**(April 23, 2008)**

Before EDMONDSON, Chief Judge, DUBINA, Circuit Judge and MARTIN,[*]
District Judge.

PER CURIAM:

**CERTIFICATION FROM THE UNITED STATES COURT OF
APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT
OF FLORIDA, PURSUANT TO FLA. R. APP. P. 9.150(a).  TO THE
SUPREME COURT OF FLORIDA AND ITS HONORABLE JUSTICES:**

In this case, we are asked to assess the constitutionality of legislation

enacted by the Florida Legislature that regulates legislative and executive

lobbying in the State of Florida.  The Florida Association of Professional

Lobbyists, Inc., et al., ("Plaintiffs") assert that the legislation — Chapter 2005-

359, Laws of Florida ("the Act") — is facially unconstitutional under both the

Florida and United States Constitutions.  They challenge the Act on four grounds,

three of which involve questions of Florida constitutional law and one of which

involves a question of federal constitutional law.  Because our resolution of the

[*]Honorable Beverly B. Martin, United States District Judge for the Northern District of Georgia,
sitting by designation.

state law questions in this case is a matter of Florida constitutional law to which the Florida Supreme Court has not definitively spoken, we certify these questions to the Florida Supreme Court. For the remaining federal law question, we affirm the district court's decision that the Act was not unconstitutionally vague or overbroad.

## I. Background

At a special session in December 2005, the Florida Legislature passed the Act, now codified at sections 11.045 and 112.3215 of the Florida Statutes, which regulates legislative and executive lobbying activities in the State of Florida. According to the Act, "no lobbyist or principal shall make, directly or indirectly, and no member or employee of the legislature," Fla. Stat. § 11.045(4)(a) (emphasis added), nor any "agency official, member, or employee shall knowingly accept, directly or indirectly, any expenditure," id. § 112.3215(6)(a).[1] Given the use of the conjunctive "and," the Act does not bar all lobbying expenditures; instead, it bars

---

[1]The term "expenditure" is defined as "a payment, distribution, loan, advance, reimbursement, deposit, or anything of value made by a lobbyist or principal for the purpose of lobbying." Fla. Stat. §§ 11.045(1)(d), 112.3215(1)(d).

3

only those expenditures that are made for lobbying purposes and are accepted by an official.

The Act also includes a disclosure provision that requires lobbying firms to file quarterly statements reporting the total compensation paid or owed by their "principals" — that is, their clients. Id. §§ 11.045(3)(a)1.c, 112.3215(5)(a)1.c. Lobbying firms must also disclose the full name, business address, and telephone number of each principal, as well as the total compensation that each principal paid or owed to the lobbying firm. Id. §§ 11.045(3)(a)2, 112.3215(5)(a)2.

In addition to the disclosure provision, the Act has enforcement provisions that allow for audits as well as for the filing of sworn complaints. Id. §§ 11.045(7)-(8), 112.3215(8)-(10). For legislative lobbying, every sworn complaint or audit indicating a possible violation (with the exception of an untimely report) is subject to investigation by designated committees of either house of the Legislature. Id. § 11.045(7). If a violation is found, the committee must report its findings, together with a recommended penalty, to either the President of the Senate or Speaker of the House, as appropriate. Id. The President of the Senate or Speaker of the House then submits the committee report and recommendation to their respective chamber; and a final determination is made by a majority vote of the members. Id. Authorized penalties include "a fine of not more than $5,000,

reprimand, censure, probation, or prohibition from lobbying for a period of time not to exceed 24 months." Id.

For executive lobbying, every sworn complaint or audit indicating a possible violation (with the exception of an untimely report) is subject to investigation by the Commission on Ethics. Id. § 112.3215(8)(a), (c). If the Commission finds probable cause of a violation, then it submits a report to the Governor and the Cabinet for a determination of the penalty. Id. § 112.3215(9), (10). Authorized penalties include reprimand, censure, or a prohibition on lobbying any agency for a period not to exceed two years. Id. § 112.3215(10). But, "[i]f the violator is a lobbying firm, the Governor and Cabinet may also assess a fine of not more than $5,000." Id.

In the district court, Plaintiffs sought a declaration that the Act was facially unconstitutional. They also sought preliminary and permanent injunctions against the Act's enforcement. Plaintiffs argued that the Act was not validly passed by the legislature because it was not read three times after it was introduced by the House. They argued that the Act infringed upon the Florida Supreme Court's authority to regulate the practice of law; and they argued that the Act contravened Florida's separation of powers doctrine. Plaintiffs also argued that the Act's expenditure restrictions, disclosure requirements, and enforcement provisions

violated their rights to free speech, due process, equal protection, and privacy under both the United States and Florida Constitutions.[2] The district court denied Plaintiffs' motions for preliminary injunction and summary judgment, concluding that Plaintiffs were unlikely to succeed on their claims. The district court then granted summary judgment to the Division of Legislative Information Services, et al., ("Defendants") on all of Plaintiffs' claims. Plaintiffs now appeal.

## II. Discussion

On appeal, Plaintiffs raise four issues. Three involve questions of state constitutional law: (1) whether the Act violates Florida's separation of powers doctrine; (2) whether the Act was improperly enacted under the Florida Constitution; and (3) whether the Act infringes upon the Florida Supreme Court's regulatory authority over the practice of law. The fourth issue involves a question of federal constitutional law: whether the Act is unconstitutionally vague or overbroad.[3]

---

[2]This lawsuit was originally filed in state court but was then removed to federal district court on the basis of federal question jurisdiction with supplemental jurisdiction over the state law claims.

[3]To the extent that Plaintiffs also contend that the Act is vague and overbroad under the Florida Constitution, we note that the Florida Supreme Court applies the same principles as exist under the United States Constitution. See Dep't of Educ. v. Lewis, 416 So. 2d 455, 461 (Fla. 1982) ("The

A.  State Law Issues

"Substantial doubt about a question of state law upon which a particular case turns should be resolved by certifying the question to the state supreme court."  Jones v. Dillard's, Inc., 331 F.3d 1259, 1268 (11th Cir. 2003).  Here, substantial doubt exists about the three issues in this case that relate solely to matters of Florida constitutional law.

First, Plaintiffs assert that the Act, or at least certain parts of it, violate Florida's separation of powers doctrine.  They specifically challenge provisions in section 11.045 that authorize designated committees of the Legislature (1) to provide advisory opinions on the applicability and interpretation of relevant provisions of the Act, (2) to investigate any person or lobbying firm alleged to have violated the Act, and (3) to make findings and a recommendation of punishment for ultimate decision by their respective houses.  Plaintiffs contend that these provisions, by assigning to the Legislature the power to interpret and enforce the Act as well as the power to adjudicate violations of the Act,

scope of the protection accorded to freedom of expression in Florida under article I, section 4 is the same as is required under the First Amendment."); State v. Wershow, 343 So. 2d 605, 608-09 (Fla. 1977) (applying the same test for vagueness to a challenge brought under both article I, section 9 of the Florida Constitution and the Fifth and Fourteenth Amendments to the United States Constitution).

7

unconstitutionally encroach upon powers belonging to the judicial and executive branches of the state government.

On the second issue, Plaintiffs claim that the Act was not validly enacted pursuant to state constitutional provisions governing special sessions.[4] They argue that the Act is invalid because it was not read three times after it was properly introduced by a two-thirds vote; instead, it was read twice before introduction and only once after introduction.

The third issue is whether the Act infringes the Florida Supreme Court's authority to regulate the practice of law in Florida. Relying upon Article V, Section 15 of the Florida Constitution,[5] Plaintiffs contend that the Act, especially its compensation reporting provisions, invades the exclusive jurisdiction of the Florida Supreme Court to regulate the admission of persons to the practice of law and to discipline those admitted. According to Plaintiffs, lobbying by lawyers constitutes the practice of law. Thus, because the Act requires lawyers who lobby

---

[4]The relevant provisions of the Florida Constitution are: (1) Article III, Section 3(c)(1), which provides that in a special session convened by the Governor's proclamation, "only such legislative business may be transacted as is within the purview of the proclamation . . . or is introduced by consent of two-thirds of the membership of each house"; and (2) Article III, Section 7, which provides that, to be validly enacted, a bill "shall be read in each house on three separate days, unless this rule is waived by two-thirds vote."

[5]This provision states, "The supreme court shall have exclusive jurisdiction to regulate the admission of persons to the practice of law and the discipline of persons admitted."

on behalf of a client to report the compensation they received, Plaintiffs argue that the Act runs afoul of the rules regulating the Florida Bar. Bar rules forbid lawyers from disclosing confidential client information, including compensation paid by the client, without the client's consent.

Having reviewed all the arguments and the case law, we conclude that the law in Florida is not sufficiently well-established for us to determine with confidence whether the Act is unconstitutional under the state's constitution. In particular, we are uncertain about whether the provisions of the Act authorizing designated committees of the Legislature to issue advisory opinions, to investigate violations of the Act, and to recommend penalties to the Legislature for violations of the Act contravene the Florida Constitution's separation of powers. We are also uncertain about whether the Florida House of Representatives properly waived the constitutional requirement that a proposed bill be read on three separate days after it has been introduced. In addition, we are uncertain about whether the Act, by regulating lawyer lobbyists, unconstitutionally infringes the Florida Supreme Court's exclusive jurisdiction to regulate the practice of law in the state.

Under the Florida Constitution, this court may certify a question to the Florida Supreme Court if it "is determinative of the cause and for which there is no controlling precedent of the supreme court of Florida." Fla. Const. art. V, §

9

3(b)(6).  Because we have found no such controlling precedent, we certify the

following questions to the Florida Supreme Court:[6]

(1) Whether the provisions of section 11.045 that authorize designated committees of the Legislature to issue advisory opinions, to investigate violations of the Act, and to recommend punishment for approval by the full Legislature violate Florida's separation of powers doctrine.

(2) Whether the Florida House of Representatives validly passed the Act under Article 3, Section 7 of the Florida Constitution, notwithstanding that the bill was not read on three separate days after it was properly introduced.

(3) Whether the Act violates the exclusive jurisdiction of the Florida Supreme Court under Article V, Section 15 of the Florida Constitution by regulating the lobbying activities of lawyers.


## B.  Federal Law Issue


The remaining issue in this case is whether the Act — on its face — is

vague or overbroad in violation of the United States Constitution.  Plaintiffs

contend that the Act's provisions banning expenditures as well as its

compensation reporting provisions are unconstitutionally vague and overbroad.

---

[6]Our statement of the certified questions is not intended to restrict the issues considered by the Florida Supreme Court.  Stevens v. Battelle Mem'l Inst., 488 F.3d 896, 904 (11th Cir. 2007); see also Miller v. Scottsdale Ins. Co., 410 F.3d 678, 682 (11th Cir. 2005) ("Our phrasing of the certified question is merely suggestive and does not in any way restrict the scope of the inquiry by the Supreme Court of Florida.").  We are mindful that "latitude extends to the Supreme Court's restatement of the issue or issues and the manner in which the answers are given." Stevens, 488 F.3d at 904 (internal quotation marks omitted).

On the issue of vagueness, Plaintiffs argue that statutory terms such as "expenditure" or "direct" and "indirect" are so inadequately defined that a person of common intelligence must guess at their meaning and that, as a result, the Act allows for unbridled discretion in its enforcement.

To overcome a vagueness challenge, a statute must "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited"; and it must "provide explicit standards for those who apply them" to avoid arbitrary and discriminatory enforcement. Grayned v. City of Rockford, 92 S. Ct. 2294, 2298-99 (1972).

We conclude that the Act does not violate due process standards about vagueness. For instance, it clearly provides that an expenditure — which is separately defined in sections 11.045(1)(d) and 112.3215(1)(d) — is unlawful only if it is made by a lobbyist or principal and accepted by a government official. Contrary to Plaintiffs' suggestion, the Act cannot reasonably be read to bar all expenditures for lobbying purposes (for example, a cab fare to the capitol). Instead, it only bars those lobbying expenditures that are accepted by a government official. See Fla. Stat. §§ 11.045(4)(a), 112.3215(6)(a) (stating that "no lobbyist or principal shall make, directly or indirectly, and no member or employee of the legislature" nor any "agency official, member, or employee shall

11

knowingly accept, directly or indirectly, any expenditure" (emphasis added)). In a similar way, we do not regard the term "indirect" as vague: a person of common intelligence would understand that it applies to expenditures or compensation paid through a third party.

In short, the statutory language at issue "provide[s] explicit standards for those who apply them" and "give[s] the person of ordinary intelligence a reasonable opportunity to know what is prohibited." Grayned, 92 S. Ct. at 2298-99. As the Supreme Court observed, "we can never expect mathematical certainty from our language." Id. at 2300. With this observation in mind, we cannot conclude that the statutory language Plaintiffs challenge is so vague as to violate the Constitution.

Plaintiffs also contend that the Act's compensation reporting provision is unconstitutionally overbroad because it requires "disclosure of compensation paid to a lobbyist even where that compensation has not been paid for expressly advocating passage or defeat of legislation." A law is overbroad that "does not aim specifically at evils within the allowable area of State control but, on the contrary, sweeps within its ambit other activities that in ordinary circumstances constitute an exercise of freedom of speech." Thornhill v. State of Alabama, 60 S. Ct. 736, 742 (1940). The First Amendment doctrine of overbreadth is an

12

exception to the normal rules governing facial challenges. <u>Virginia v. Hicks</u>, 123 S. Ct. 2191, 2196 (2003).[7] For the First Amendment, a law is facially invalid if it "punishes a 'substantial' amount of protected free speech, 'judged in relation to the statute's plainly legitimate sweep.'" <u>Hicks</u>, 123 S. Ct. at 2196 (quoting <u>Broadrick v. Oklahoma</u>, 93 S. Ct. 2908, 2918 (1973)). We note, however, the Supreme Court's admonition that application of the overbreadth doctrine is "strong medicine" that should be used "sparingly and only as a last resort." <u>Broadrick</u>, 93 S. Ct. at 2916.

Plaintiffs do not deny the Legislature's legitimate interest in the public disclosure of compensation paid to a lobbying firm for the purpose of lobbying. They instead contend that the statute sweeps too broadly by requiring the reporting of all compensation paid to lobbyists "irrespective of how the funds are spent." We agree with the district court that Plaintiffs have misconstrued the Act. Contrary to their claim that the Act requires the disclosure of all compensation paid to lobbyists regardless of how the funds are used, the Act actually only requires the reporting of compensation that lobbyists receive "for any lobbying activity." Fla. Stat. §§ 11.045(1)(b), 112.3215(1)(c).

---

[7]In general, to challenge a statute facially, "the challenger must establish that no set of circumstances exists under which the Act would be valid." <u>United States v. Salerno</u>, 107 S. Ct. 2095, 2100 (1987).

13

That the compensation reporting provision is limited to compensation received "for any lobbying activity" does not end the matter, however. The Act defines "lobbying" as "influencing or attempting to influence legislative action or nonaction through oral or written communication or an attempt to obtain the goodwill of a member or employee of the Legislature." Id. § 11.045(1)(f); see also id. § 112.3215(1)(f) (defining "lobbies" as "seeking, on behalf of another person, to influence an agency with respect to a decision of the agency in the area of policy or procurement or an attempt to obtain the goodwill of an agency official or employee"). Plaintiffs argue that lobbying activity, as defined in the Act, encompasses not only direct communications from lobbyists to legislators and state officials (which is undoubtedly a legitimate object of regulation[8]), but also indirect communications — such as opinion articles, issue advertisements, and

---

[8]In United States v. Harriss, 74 S. Ct. 808 (1954), the Supreme Court upheld the disclosure requirements in the Federal Regulation of Lobbying Act of 1946, which applied to persons who solicit, collect, or receive money or any other thing of value to aid "'[t]he passage or defeat of any legislation by the Congress of the United States'" or "'[t]o influence, directly or indirectly, the passage or defeat of any legislation by the Congress of the United States.'" Id. at 812-13 (quoting Section 307 of the Lobbying Act). To avoid constitutional infirmity, the Court construed the disclosure requirements narrowly to cover only those "contributions and expenditures having the purpose of attempting to influence legislation through direct communication with Congress." Id. at 815 (emphasis added). In doing so, the Court upheld the statute against First Amendment challenge on the ground that Congress was "not constitutionally forbidden to require the disclosure of lobbying activities" for the purpose of "self-protection." Id. at 816.

14

letterwriting campaigns — from lobbyists on behalf of their clients to the press and public at large for the purpose of influencing legislation or policy.

We have made clear that the state has a compelling interest "in 'self-protection' in the face of coordinated pressure campaigns" directed by lobbyists. Fla. League of Prof'l Lobbyists, Inc. v. Meggs, 87 F.3d 457, 460, 461 (11th Cir. 1996). Also, lobbyist disclosure laws of the sort at issue here allow voters to appraise "the integrity and performance of officeholders and candidates, in view of the pressures they face." Id. at 460. We have said that these interests are compelling not only when the pressures to be evaluated by voters and officeholders are "direct," but also when they are "indirect." See id. at 461 ("[T]he government interest in providing the means to evaluate these pressures may in some ways be stronger when the pressures are indirect, because then they are harder to identify without the aid of disclosure requirements."); see also Minn. State Ethical Practices Bd. v. Nat'l Rifle Ass'n of Am., 761 F.2d 509, 511-13 (8th Cir. 1985) (upholding a state's interest in applying its reporting requirements to indirect communications between a lobbyist and members of an association for the purpose of influencing specific legislation).

Because the First Amendment allows required reporting of considerably more than face-to-face contact with government officials, we decline to invalidate

the Act on its face as substantially overbroad. See Meggs, 87 F.3d at 461.

Instead, we leave "whatever overbreadth may exist [to] be cured through case-by-case analysis of the fact situations to which [the Act's] sanctions, assertedly, may not be applied." Broadrick, 93 S. Ct. at 2918.

### III. Conclusion

After reviewing Florida case law, we are uncertain whether the Act violates Florida's separation of powers doctrine, was properly enacted under Florida law, or infringes upon the Florida Supreme Court's jurisdiction. Because these questions are solely issues of state law that should be decided by the Florida Supreme Court, we certify these questions to the Florida Supreme Court. We do, however, affirm the district court's ruling that the Act is not vague or overbroad under the United States Constitution.

**AFFIRMED in part, and QUESTIONS CERTIFIED.**