POLSTON, J.
 

 This case is before the Court for review of questions of Florida law certified by the United States Court of Appeals for the Eleventh Circuit that are determinative of a cause pending in that court and for which there appears to be no controlling precedent.
 
 [1]
 

 Background
 

 The instant case arose after Appellants, the Florida Association of Professional Lobbyists (“FAPL”), initiated a facial challenge of chapter 2005-359, Laws of Florida, currently codified at sections 11.045 and 112.8215, Florida Statutes (2008), which regulates and disciplines lobbyists.
 
 [2]
 

 The case was originally filed in circuit court, Second Circuit, Leon County, but was removed to federal district court in the Northern District of Florida. The Northern District granted summary judgment to the defendants, Division of Legislative Information Services, et al. (the “Division”), on all counts, and FAPL appealed to the Eleventh Circuit. The Eleventh Circuit affirmed the Northern District on the federal question presented and held that the Act is not unconstitutionally vague or overly broad under federal constitutional standards.
 
 Fla. Ass’n of Prof'l Lobbyists v. Div. of Legislative Info. Servs.,
 
 525 F.3d 1073, 1080-81 (11th Cir.2008). However, it also stated that “the law in Florida is not sufficiently well-established for us to determine with confidence whether the act is unconstitutional under the state’s constitution.”
 
 Id.
 
 at 1077. Consequently, it certified three questions of Florida law to this Court, specifically:
 

 (I) WHETHER THE ACT VIOLATES FLORIDA’S SEPARATION OF POWERS DOCTRINE;
 

 (II) WHETHER THE ACT WAS VALIDLY PASSED BY THE LEGISLATURE ACCORDING TO THE REQUIREMENTS OF THE'FLORIDA STATE CONSTITUTION; and
 

 (III) WHETHER THE ACT INFRINGES ON THE FLORIDA SUPREME COURT’S EXCLUSIVE JURISDICTION TO REGULATE LAWYERS AND THE PRACTICE OF LAW.
 

 The Eleventh Circuit set out the particulars of the Act as follows:
 

 According to the Act, “no lobbyist or principal shall make, directly or indirectly,
 
 and
 
 no member or employee of the legislature,” Fla. Stat. § 11.045(4)(a) (emphasis added), nor any “agency official, member, or employee shall knowingly accept, directly or indirectly, any expenditure.”
 
 Id.
 
 § 112.3215(6)(a). [n.1] Given the use of the conjunctive “and,” the Act does not bar all lobbying expenditures; instead, it bars only those expenditures that are made for lobbying purposes
 
 and
 
 are accepted by an official.
 

 
 *514
 
 [n.1] The term “expenditure” is defined as “a payment, distribution, loan, advance, reimbursement, deposit, or anything of value made by a lobbyist or principal for the purpose of lobbying.” Fla. Stat. §§ 11.045(l)(d), 112.3215(l)(d).
 

 The Act also includes a disclosure provision that requires lobbying firms to file quarterly statements reporting the total compensation paid or owed by their “principals” — that is, their clients.
 
 Id.
 
 §§ 11.045(3)(a)l.c, 112.3215(5)(a)l.c. Lobbying firms must also disclose the full name, business address, and telephone number of each principal, as well as the total compensation that each principal paid or owed to the lobbying firm.
 
 Id.
 
 §§ 11.045(3)(a)2,112.3215(5)(a)2.
 

 In addition to the disclosure provision, the Act has enforcement provisions that allow for audits as well as for the filing of sworn complaints.
 
 Id.
 
 §§ 11.045(7)-(8), 112.3215(8)-(10). For legislative lobbying, every sworn complaint or audit indicating a possible violation (with the exception of an untimely report) is subject to investigation by designated committees of either house of the Legislature.
 
 Id.
 
 § 11.045(7). If a violation is found, the committee must report its findings, together with a recommended penalty, to either the President of the Senate or Speaker of the House, as appropriate.
 
 Id.
 
 The President of the Senate or Speaker of the House then submits the committee report and recommendation to their respective chamber; and a final determination is made by a majority vote of the members.
 
 Id.
 
 Authorized penalties include “a fine of not more than $5,000, reprimand, censure, probation, or prohibition from lobbying for a period of time not to exceed 24 months.”
 
 Id.
 

 For executive lobbying, every sworn complaint or audit indicating a possible violation (with the exception of an untimely report) is subject to investigation by the Commission on Ethics.
 
 Id.
 
 § 112.3215(8)(a), (c). If the Commission finds probable cause of a violation, then it submits a report to the Governor and the Cabinet for a determination of the penalty.
 
 Id.
 
 § 112.3215(9), (10). Authorized penalties include reprimand, censure, or a prohibition on lobbying any agency for a period not to exceed two years.
 
 Id.
 
 § 112.3215(10). But, “[i]f the violator is a lobbying firm, the Governor and Cabinet may also assess a fine of not more than $5,000.”
 
 Id.
 

 Fla. Ass’n of Prof'l Lobbyists v. Div. of Legislative Info. Servs.,
 
 525 F.3d 1073, 1075-76 (11th Cir.2008).
 

 Analysis
 

 For the following reasons, we find that the Act (I) does not violate Florida’s separation of powers doctrine; (II) was validly enacted by the Florida Legislature; and (III) does not infringe on the Florida Supreme Court’s jurisdiction to regulate lawyers or the practice of law.
 

 I. The Act Does Not Violate Florida’s Separation of Powers Doctrine
 

 FAPL argues that, in enacting SB 6-B and thereby giving itself the power to issue advisory opinions, investigate violations, and recommend punishment for infractions of the Act that it alone can approve, the Legislature has directly encroached on the powers of the judicial and executive branches. We disagree.
 

 “The [separation of powers] doctrine encompasses two fundamental prohibitions. The first is that no branch may encroach upon the powers of another. The second is that no branch may delegate to another branch its constitutionally assigned power.”
 
 Chiles v. Children A, B, C, D, E, & F,
 
 589 So.2d 260, 264 (Fla.1991)
 
 *515
 
 (citation omitted). Because improper delegation of powers is not implicated here, we only address the issue of encroachment.
 

 The Florida Constitution does not explicitly prohibit any of the functions set out in the Act. Although the constitution does not give the Legislature the exclusive power to discipline lobbyists, it also does not prevent it from doing so. As this Court has noted, “the state constitution does not exhaustively list each branch’s powers.”
 
 Fla. House of Representatives v. Crist,
 
 999 So.2d 601, 611 (Fla.2008). Rather,
 

 the powers of the respective branches “are those so defined ... or such as are inherent or so recognized by immemorial governmental usage, and which involve the exercise of primary and independent will, discretion, and judgment, subject not to the control of another department, but only to the limitations imposed by the state and federal Constitutions.” [Each branch has] “the inherent right to accomplish all objects naturally within the orbit of that department, not expressly limited by the fact of the existence of a similar power elsewhere or the express limitations in the constitution.”
 

 Id.
 
 at 611 (citation omitted) (quoting
 
 State v. Atlantic Coast Line R.R.,
 
 47 So. 969, 974 (Fla.1908);
 
 Sun Ins. Office v. Clay,
 
 133 So.2d 735, 742 (Fla.1961)). Therefore, since the regulation, discipline, and licensing of lobbyists is not subject to the control of any branch or office, the Legislature is not prohibited from using its own discretion and judgment to accomplish the task.
 
 See State v. Palmer,
 
 791 So.2d 1181, 1183 (Fla. 1st DCA 2001) (“[A] branch of government is prohibited from exercising a power only when that power has been constitutionally assigned exclusively to another branch; and the separation of powers doctrine does not contemplate that every governmental activity must be classified as belonging exclusively to a single branch.”). Accordingly, we answer the first question in the negative and find that the Act does not violate Florida’s separation of powers doctrine.
 

 II. The Act Was Validly Enacted by the Florida Legislature
 

 FAPL also claims that the Act was not validly enacted by the Legislature according to the procedural requirements of the Florida Constitution. We disagree.
 

 Two constitutional provisions are relevant here. First, article III, section 3 provides in part that, during a special session, the only legislative business that may be transacted is that business which is within the purview of the governor’s proclamation or that which is introduced by consent of two-thirds of the membership of each house.
 
 See
 
 Art. Ill, § 3(c)(1), Fla. Const. Also relevant is article III, section 7, which provides the procedure for valid enactment of a bill. It states:
 

 Any bill may originate in either house and after passage in one may be amended in the other. It shall be read in each house on three separate days, unless this rule is waived by two-thirds vote; provided the publication of its title in the journal of a house shall satisfy the requirement for the first reading in that house. On each reading, it shall be read by title only, unless one-third of the members present desire it read in full. On final passage, the vote of each member voting shall be entered on the journal. Passage of a bill shall require a majority vote in each house. Each bill and joint resolution passed in both houses shall be signed by the presiding officers of the respective houses and by the secretary of the senate and the clerk of the house of representatives during the
 
 *516
 
 session or as soon as practicable after its adjournment sine die.
 

 Art. Ill, § 7, Fla. Const.
 

 After reviewing the journals of both chambers, we find that all the rules and requirements for enacting a bill during special session were followed. On December 5, 2005, SB 6-B was formally introduced in the Florida Senate after it received the required two-thirds vote of the membership. It was also read for the first time.
 
 Fla. S. Jour. 2
 
 (Spec.Sess.2005). Then, on December 7, 2005, the rules were waived and it was read for the second and third times. Thereafter, SB 6-B was passed, the vote was recorded, it was ordered engrossed, and it was certified to the House.
 
 Fla. S. Jour.
 
 33, 42 (Spec.Sess.2005). In the Florida House, on December 5, 2005, House Bill 63-B, a bill relating to the registration and reporting requirements for lobbyists, was formally introduced after receiving the required two-thirds vote.
 
 See Fla. H.R. Jour.
 
 3 (Spec.Sess.2005). Then, on December 8, 2005, SB 6-B was read three times in the House after the rules were waived; it was also formally introduced in the House by a two-thirds vote after the bill’s second reading; its passing vote was properly recorded in the House Journal; and it was enrolled, signed, and filed.
 
 Fla. H.R. Jour.
 
 45 (Spec.Sess.2005);
 
 see also State v. Kaufman,
 
 430 So.2d 904, 905 (Fla.1983) (“[W]hen enrolled, signed, and filed, acts of the legislature are prima facie valid.”).
 

 FAPL claims that the Act was not properly enacted because SB 6-B was read twice in the House before its formal introduction and only once afterwards. It asserts that the three-readings requirement, when executed in this manner, is insufficient to satisfy the constitutional requirements for enacting legislation. We find FAPL’s argument unpersuasive because SB 6-B did not require a formal introduction in the House. Rather, since HB 63-B, a similar subject bill, had already been formally introduced in the House by the requisite two-thirds vote, no further introduction of SB 6-B was necessary because it fell within the purview of the subject matter of HB 63-B. Therefore, the passage of SB 6-B constituted the transaction of “legislative business” which was “introduced by consent of two-thirds of the membership of each house.” Art. Ill, § 3(c)(1), Fla. Const.
 
 [3]
 
 Accordingly, we answer the second question affirmatively and find that SB 6-B was validly enacted by the Florida Legislature.
 

 III. The Act Does Not Infringe on the Florida Supreme Court’s Jurisdiction to Regulate Lawyers or the Practice of Law
 

 FAPL also argues that lobbying is part of the general practice of law and that the Act is unconstitutional because it regulates and disciplines lawyers who work as lobbyists and thereby encroaches on the jurisdiction of this Court. We disagree.
 

 Section 112.3215, Florida Statutes (2008), which pertains to lobbying before the executive branch, defines “lobbies” and “lobbyist” as follows:
 

 (f) “Lobbies” means seeking, on behalf of another person, to influence an agency with respect to a decision of the agency in the area of policy or procurement or an attempt to obtain the goodwill of an agency official or employee. “Lobbies” also means influencing or attempting to influence, on behalf of another, the Constitution Revision Commission’s action or nonaction through
 
 *517
 
 oral or written communication or an attempt to obtain the goodwill of a member or employee of the Constitution Revision Commission.
 

 [[Image here]]
 

 (h) “Lobbyist” means a person who is employed and receives payment, or who contracts for economic consideration, for the purpose of lobbying, or a person who is principally employed for governmental affairs by another person or governmental entity to lobby on behalf of that other person or governmental entity.
 
 “Lobbyist” does not include a person who is:
 

 1.
 
 An attorney,
 
 or any person who represents a client in a judicial proceeding or in a formal administrative proceeding conducted pursuant to chapter 120 or any other formal hearing before an agency, board, commission, or authority of this state.
 

 (Emphasis added.)
 

 Similarly, section 11.045(l)(f), Florida Statutes (2008), defines legislative lobbying as “influencing or attempting to influence legislative action or nonaction through oral or written communications or an attempt to obtain goodwill of a member or employee of the Legislature.”
 
 See also Black’s Law Dictionary
 
 845 (5th ed.1979) (defining “lobbying” as “[a]ll attempts including personal solicitation to induce legislators to vote in a certain way or to introduce legislation”).
 

 On the other hand, this Court has explained that “the performance of services in representing another before the courts is the practice of law.”
 
 State ex rel. Fla. Bar v. Sperry,
 
 140 So.2d 587, 591 (Fla.1962),
 
 vacated on other grounds,
 
 373 U.S. 379, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963). Additionally, as the Act expressly acknowledges, the practice of law includes representing clients in administrative proceedings under chapter 120, Florida Statutes, and representing clients in formal hearings before agencies, boards, and commissions.
 
 See
 
 § 112.3215(l)(h)(l), Fla. Stat. (2008). The practice of law also includes “the giving of legal advice” and “the preparation of legal instruments.”
 
 Sperry,
 
 140 So.2d at 591;
 
 see also Fla. Bar v. Neiman,
 
 816 So.2d 587, 596 (Fla.2002).
 

 Given the differences between the two activities, we conclude that lobbying as defined by the Act does not constitute the practice of law. Accordingly, we find that lobbyists, who may also be lawyers when engaged in lobbying activities, may be regulated and disciplined for their actions or inactions as prescribed by the Act. We also find that those regulations and disciplinary actions described in the Act do not infringe on this Court’s jurisdiction to regulate and discipline lawyers, who may also be lobbyists, in matters relating to their practice of law.
 

 Conclusion
 

 For the reasons stated above, we answer the first and third questions in the negative and the second question affirmatively and hold that the Act (I) does not violate Florida’s separation of powers doctrine; (II) was validly enacted by the Florida Legislature; and (III) does not infringe on the Florida Supreme Court’s jurisdiction to regulate lawyers or the practice of law.
 

 QUINCE, C.J., and PARIENTE, LEWIS, CANADY, and LABARGA, JJ., concur.
 

 [1]
 

 . We have jurisdiction.
 
 See
 
 art. V, § 3(b)(6), Fla. Const.
 

 [2]
 

 . The challenged legislation came about through the introduction and passage of Senate Bill 6-B during the 2005 special legislative session. Hereinafter, it will be referred to as "the Act” or "SB 6-B.”
 

 [3]
 

 . We need not address, and specifically do not rule on, whether the two-thirds vote with respect to SB 6-B after its second reading in the House would have been independently sufficient to satisfy the constitutional requirement.