[DO NOT PUBLISH]

# In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-13213

Non-Argument Calendar

_____

JERRY L. HOFFMAN, JR.,

Plaintiff-Appellant,

*versus*

JOSE DELGADO,
in his individual capacity,
CITY OF PUNTA GORDA,

Defendants-Appellees,

CITY OF PUNTA GORDA POLICE DEPARTMENT,

Defendant.

———————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 2:23-cv-00130-SPC-NPM

———————————

Before JORDAN, GRANT, and LAGOA, Circuit Judges.

PER CURIAM:

Jerry Hoffman was arrested while violating a local ordinance prohibiting audio and video recording in municipal buildings. He argues that the ordinance violates the First Amendment and that his arrest involved excessive force and false arrest under the Fourth Amendment. The district court dismissed Hoffman's complaint with prejudice for failure to state a claim. Because Hoffman fails to adequately allege that the ordinance violated his constitutional rights, that the arresting officer lacked probable cause, and that excessive force was used, we affirm the dismissal.

**I.**

Hoffman is a self-described photojournalist. According to his complaint, in July 2022, he and three associates entered the lobby of the police headquarters for the City of Punta Gorda, Florida. They intended to inquire about the police department's failure to respond to their Freedom of Information Act requests.

Hoffman carried a camera, with which he planned to record his interactions at the headquarters. But doing so violated an ordinance prohibiting filming on city property—except during public meetings—without the consent of those who are filmed and without approval from the city manager. Punta Gorda, Fla., Code of Ordinances ch. 15, § 15-48(e), (h)(15) (2024).

According to Hoffman's complaint—the factual allegations of which we must credit at this stage, three officers approached Hoffman and asked whether he was recording. They informed Hoffman that recording violated a city ordinance and asked him to step outside. Believing that this request violated his First Amendment rights, Hoffman refused to leave. One of the officers again asked Hoffman to "please step outside." In response to a question by Hoffman about the consequences of violating the ordinance, another officer responded that the penalty would be a fine because "it's not arrestable." According to Hoffman's complaint, which must be credited at this stage, the officer told Hoffman that he was "being fine" and was "willing to step outside." Without complying with the repeated requests to leave, Hoffman asked to speak to a police information officer.

At this point, a fourth officer—Jose Delgado—walked into the lobby and reiterated that Hoffman should exit the building. Hoffman asked Delgado not to touch him, but Delgado allegedly approached and began to arrest him. Hoffman alleges that Delgado "forcefully shoved" Hoffman into a wall, grabbed his wrist, tried to pull him towards the exit, and grabbed him several

more times. Hoffman swore at and verbally berated Delgado before attempting to exit the building during the arrest. Delgado allegedly struck Hoffman with a blow that shut off his camera, twisted his wrists, and caused him pain while arresting him. Hoffman alleges that Delgado twice struck Hoffman in the back with his knee, twisted his wrist again, and pulled on his handcuffed arms. An examination at a hospital revealed that Hoffman suffered no broken bones.

Hoffman sued both Delgado and the City of Punta Gorda under 42 U.S.C. § 1983. In his amended complaint, which is operative for this appeal, he claimed that the anti-filming ordinance violated his First Amendment rights, Delgado's actions constituted First Amendment retaliation, and that the arrest violated the Fourth Amendment as excessive force and false arrest.[1] The district court dismissed Hoffman's complaint with prejudice for failure to state a claim. Hoffman now appeals.

## II.

We review de novo a district court's dismissal of a complaint for failure to state a claim. *Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.*, 917 F.3d 1249, 1260 (11th Cir. 2019). At this stage, we accept the complaint's factual allegations as true and

---

[1] Additionally, Hoffman sought a writ of quo warranto and "the revocation of the City's charter," and he alleged violations of his Eighth Amendment and due process rights. Because Hoffman abandoned these issues by not raising them on appeal, we do not address them further. *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004).

view them in the light most favorable to the plaintiff.  *Id.*  To survive, these factual allegations must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III.

On appeal, Hoffman argues that he properly pleaded violations of his First and Fourth Amendment rights.  We disagree on both counts and therefore affirm the dismissal of his complaint.

## A.

Hoffman contends that the ordinance, which prohibits recording in city-owned buildings in most circumstances, violates the First Amendment's freedom of speech guarantee.  The ordinance has two relevant provisions.  The first prohibits recording "within City-owned, controlled, and leased property" unless the videographer obtains "the consent of all persons whose voice or image is being recorded."  Punta Gorda, Fla., Code of Ordinances ch. 15, § 15-48(e) (2024).  The second bars audio or video recording "anywhere inside of City buildings," except "as otherwise approved by the City Manager" or a designee.  *Id.* § 15-48(h)(15).  Neither provision applies to official public meetings.  *Id.* § 15-48(e), (h)(15).

Hoffman is correct that this Circuit has long recognized that the "First Amendment protects the right to gather information about what public officials do on public property, and specifically, a right to record matters of public interest."  *Smith v. City of*

*Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000).[2]  Recording falls within the ambit of First Amendment guarantees.  *Id.*  Like all First Amendment rights, however, the right to record is not absolute. *Elrod v. Burns*, 427 U.S. 347, 360 (1976).  Indeed, "the Constitution does not require the government to 'grant access to all who wish to exercise their right to free speech,' no matter the setting, 'without regard to the nature of the property or to the disruption that might be caused by the speaker's activities.'"  *McDonough v. Garcia*, 116 F.4th 1319, 1322 (11th Cir. 2024) (en banc) (quoting *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 799–800 (1985)).  Instead, the validity of a regulation depends on the forum in which it applies.  *Id.*  Our cases recognize four types of forums: the traditional public forum, the designated public forum, the limited public forum, and the nonpublic forum.  *Id.*

The District Court treated the police department's lobby as a limited public forum.    Because Hoffman joins in this

---

[2] Hoffman abandoned any argument based on the Florida Constitution's protection for the freedom of speech by failing to raise it in his initial brief on appeal.  *Sapuppo v. Allstate Floridian Ins.*, 739 F.3d 678, 680–81 (11th Cir. 2014). Moreover, both counts in his complaint are raised under 42 U.S.C. § 1983, which can vindicate only rights arising from the federal Constitution or federal statutes—not state constitutions.  *Club Madonna, Inc. v. City of Miami Beach*, 924 F.3d 1370, 1378 (11th Cir. 2019).  In any event, the Florida Supreme Court has stated that the "scope of the protection accorded to freedom of expression" under the Florida Constitution "is the same as is required under the First Amendment" to the federal Constitution.  *Dep't of Educ. v. Lewis*, 416 So. 2d 455, 461 (Fla. 1982); *see also Florida Ass'n of Pro. Lobbyists, Inc. v. Div. of Legis. Info. Servs. of the Florida. Off. of Legis. Servs.*, 525 F.3d 1073, 1076 (11th Cir. 2008).

characterization and the defendants do not contest it, we will consider it under the standard for limited public forums. There are, however, good arguments that the lobby is really a nonpublic forum.  Like a military base or a federal building, police headquarters are not "open to the public at large for discussion of any and all topics." *M.N.C. of Hinesville, Inc. v. United States Dep't of Defense*, 791 F.2d 1466, 1473 (11th Cir. 1986); *United States v. Gilbert*, 920 F.2d 878, 884 (11th Cir. 1991); *Barrett v. Walker Cnty. Sch. Dist.*, 872 F.3d 1209, 1224 (11th Cir. 2017). Lobbies of police departments generally exist to permit "certain groups" to discuss specific topics—namely, permitting those with legitimate public business to discuss public safety needs. *McDonough*, 116 F.4th at 1328 (quoting *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106–07 (2001)). In any event, the standard we apply when reviewing speech regulations in limited public forums is the same standard we apply for nonpublic forums. *Id.* at 1324. For limited public forums, restrictions "on speech must be viewpoint neutral and 'reasonable in light of the purpose served by the forum.'" *Id.* at 1328 (quoting *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 829 (1995)).

Here, the anti-recording ordinance is reasonable. The First Amendment does not require the government to "permit all forms of speech on property that it owns and controls." *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 678 (1992). The city "has the right to exercise control over access to" the "workplace in order to avoid interruptions to the performance of the duties of its employees." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473

U.S. 788, 805–06 (1985). A prohibition on recording protects the police headquarters from distractions and guards sensitive documents from confidentiality threats. The ordinance thus secures the building for its intended purpose of facilitating assistance for those with public safety needs. *See Bloedorn v. Grube*, 631 F.3d 1218, 1231–32 (11th Cir. 2011).

Moreover, the ordinance does not facially "discriminate on the basis of viewpoint." *McDonough*, 116 F.4th at 1324. The two ordinance provisions ban recording in city-owned buildings without consent and without the approval of the city manager, respectively. Those general prohibitions do not regulate speech based on "the specific motivating ideology or the opinion or perspective of the speaker." *Rosenberger*, 515 U.S. at 829.

Hoffman fails to state a claim that the city violated his First Amendment rights by prohibiting him from recording in the police department lobby. That regulation as alleged is reasonable and viewpoint neutral, and thus valid in a limited public forum. *See McDonough*, 116 F.4th at 1328.[3] Likewise, because the First Amendment did not protect Hoffman's actions, he could not plead a claim against either Delgado or the city for retaliating against him

---

[3] Hoffman attempts to raise an unbridled discretion claim premised on the city manager's role in providing permission to record inside city buildings. His complaint, however, failed to raise this argument, and therefore he cannot state a claim based upon it. *See Roy v. Ivy*, 53 F.4th 1338, 1353 (11th Cir. 2022). The City did not understand him to be alleging an unbridled discretion claim. Nor did the district court, which did not address that supposed argument in its order dismissing the complaint.

for exercising his First Amendment rights. *Bailey v. Wheeler*, 843 F.3d 473, 480 (11th Cir. 2016).

## B.

Hoffman's Fourth Amendment claims fair no better. He alleges that Delgado and the city falsely arrested him and exerted excessive force. Hoffman fails to state a claim of false arrest for a straightforward reason—the arrest was not "false." The "existence of probable cause at the time of arrest is an absolute bar to a subsequent constitutional challenge to the arrest." *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010). A reasonable belief that "a criminal offense has been or is being committed" creates probable cause. *Id.*

Here, even according to Hoffman's allegations, Delgado had probable cause. Hoffman's own complaint admits that he was violating the city ordinance when he was recording in the police department lobby. Despite repeated instructions from the officers present, Hoffman refused to cease recording or leave the premises. When Delgado approached Hoffman as he persisted in recording within the building, Hoffman still failed to exit. As a result, Delgado had probable cause to believe that Hoffman was violating Florida law, which makes it a misdemeanor to "resist, obstruct, or oppose" an officer's "execution of any legal duty," even without violence. Fla. Stat. § 843.02. And, as we held above, Hoffman fails to adequately allege that this arrest was invalid as a violation of the First Amendment.

For similar reasons, Hoffman's excessive force claim also fails. If an officer has probable cause to make an arrest, de minimis force cannot support a claim of excessive force. *Zivojinovich v. Barner*, 525 F.3d 1059, 1072 (11th Cir. 2008). Delgado, according to Hoffman's own complaint, had probable cause to arrest Hoffman. And the force that the complaint alleges was employed by Delgado was de minimis under our Circuit's precedents. Hoffman complains that Delgado allegedly pushed him against a wall, grabbed his wrists, pushed him towards an exit, struck his camera out of his hands, and caused him pain. We have said, however, that facts more serious than these allegations fell "well within the ambit of the de minimum force principle." *Nolin v. Isbell*, 207 F.3d 1253, 1258 n.4 (11th Cir. 2000). "Painful handcuffing," even with resulting bone fractures unlike the alleged facts here, and "twist[ing]" or "jerking" an arrestee's arms do not violate the Fourth Amendment. *Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002). Likewise, this Court found that, when an officer "grabbed" the plaintiff "and shoved him a few feet against a vehicle," "pushed [his] knee into" the plaintiff's back and shoved the plaintiff's "head against the van," invasively searched the plaintiff "in an uncomfortable manner," handcuffed the plaintiff, and caused minor bruising, "the facts sound little different from the minimal amount of force and injury involved in a typical arrest." *Nolin*, 207 F.3d at 1258 n.4.

⋆    ⋆    ⋆

Because Hoffman failed to allege that Delgado and the City of Punta Gorda violated his First or Fourth Amendment rights, we **AFFIRM** the district court's order dismissing Hoffman's complaint.